# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laurel Road Homeowners  :
Association, Inc.,  :
              Appellant  :
               :   No. 960 C.D. 2017
           v.  :
               :
William E. Freas and Nancy Freas  :
               :
Laurel Road Homeowners  :
Association, Inc.  :
               :   No. 961 C.D. 2017
           v.  :
               :   Argued: June 4, 2018
William E. Freas and Nancy Freas,  :
           Appellants  :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE McCULLOUGH                                FILED: July 26, 2018

        In these cross-appeals, Laurel Road Homeowners Association, Inc. (Association), plaintiff below, and William E. Freas and Nancy Freas (the Declarants or the Freas), defendants below, appeal from the February 21, 2017 orders of the Court of Common Pleas of Chester County (trial court) denying their motions for post-trial relief following the decision and verdict entered by the trial court in favor of the Association on Count I and in favor of the Declarants on Counts II and III and awarding the Association damages.

## Background

We briefly discuss the facts and proceedings below to the extent they are relevant to the legal issues presented. The Association is a not-for-profit corporation[1] and it is the mandatory unit owners' association for a nine-unit planned community known as Ridings at Newlin. The Freas were the developers and declarants of the community and the trial court made numerous findings concerning their performance of duties in this capacity. As illustrative examples, the Declarants "did not allow for unit owners to participate in the governance of the Association or have members of the executive board elected by unit owners"; "did not keep any financial records for the Association"; "did not prepare annual financial statements for the Association"; "did not make financial and other records available for examination by any [u]nit [o]wner and authorized agents"; "did not hold meetings of the Association that included the attendance by unit owners"; "did not create and maintain a reserve fund for the Association"; "did not call a Special Meeting of the Association to secure [u]nit [o]wner approval for the transfer of control of the Association from the Declarants to the unit owners"; "sought to amend the Declaration without providing any explanation of the impact of that Amendment to Declaration to the unit owners, which included the removal of a declared unit and a reapportionment of the common expense liability"; "transferred the common title and ownership to a common area prior to the completion of the common area or the involvement of the unit owners in the operation of the Association"; and "excluded [the Association] from knowledge of all aspects of the operation of the Association and its ongoing obligations prior to January 14, 2016." (Findings of Fact (F.F.) Nos. 17-23, 33, 48.)

---

[1] Because we have appellate jurisdiction over appeals involving not-for-profit corporations, the Superior Court transferred the appeals to this Court.

On November 11, 2006, the Declarants began executing deeds and transferring title of the individual lots or units to third-party purchasers and all the units were sold by July 9, 2010. However, the Declarants did not relinquish control to the Association until January 2014. (F.F. No. 64.)

On March 9, 2015, the Association filed a three-count complaint, alleging that the Declarants engaged in malfeasance and/or misfeasance during the period when they solely and exclusively developed the planned community and controlled the Association. In Count I, the Association proceeded on the common law theory that the Declarants failed to exercise good faith and/or breached fiduciary duties and also violated statutory provisions of the Uniform Planned Community Act (UPCA);[2] Count II asserted that the Declarants breached the statutory warranty against structural defects in common areas conferred by section 5411 of the UPCA, 68 Pa.C.S. §5411; and Count III advanced a claim for assessments pursuant to common law contract principles and violations of the UPCA. (Trial court op. at 1.)

Following a bench trial, the trial court concluded that Count II failed as a matter of law because Ridings at Newlin qualified as a "small planned community" under section 5102(a)(1) of the UPCA; therefore, only certain delineated sections of the UPCA were applicable. Because the warranty protection in section 5411 was not one of the applicable enumerated sections, the trial court concluded that section 5411 could not serve as basis for a cause of action. (Trial court op. at 19, 31.) The trial court also determined that Count III, which alleged that the Declarants failed to pay common assessments as required by the UPCA, failed for the same reason. To the extent that the claim for assessments was cognizable as a matter of common law contract, the trial

---

[2] 68 Pa.C.S. §§5101-5414.

court determined that provisions of the Declaration indicated that the Declarants had no duty to pay the assessments. (Trial court op. at 28-32.)

On the claim that the trial court found meritorious, Count I, the trial court dismissed it insofar as it alleged violations of statutory duties under the UPCA, again finding that the pertinent provisions of the statute did not apply to Ridings at Newlin per 5102(a)(1) of the UPCA. Citing *Little Mountain Community Association, Inc. v. Southern Columbia Corp.*, 92 A.3d 1191 (Pa. Super. 2014), the trial court also rejected the Association's attempt to state a claim under section 6.20 of the Restatement (Third) of Property, RESTATEMENT (THIRD) PROPERTY: SERVITUDES §6.20 (Am. Law Inst. 2000) [hereinafter RESTATEMENT], noting that this section, to date, has not been adopted as law in Pennsylvania. However, the trial court read *Little Mountain Community Association* as opening the door for a legal conclusion that the Declarants nevertheless owed the Association a common law fiduciary duty. Concluding that the Association surrendered substantial control to the Declarants with respect to Ridings at Newlin in the pertinent time frame, and that the Declarants exercised this control, the trial court found that a confidential relationship existed between the two, thus giving rise to fiduciary duties owed by the Declarants. (Trial court op. at 19-22, 31-32.)

The trial court then found that the Declarants committed "numerous" actionable breaches of their fiduciary duties and classified them into two general categories: failure to properly manage and operate the Association and failure to complete necessary common areas. More specifically, the trial court found that the Declarants filed, created, and/or drafted a Declaration, three sets of Bylaws, and plats and plans that contained multiple deficiencies; failed to keep operational records and provided the unit owners with deficient community documents; and failed to maintain and complete the common area private roadway. In awarding $59,588.00 in damages,

4

the trial court relied on expert testimony proffered by the Association and itemized its monetary award as follows: $31,588.00 to repair the common area private roadway, $6,500.00 to replace and/amend the existing Declaration, $6,500.00 for drafting the revised Bylaws, and $15,000.00 to replace the subdivision plans. In so determining, the trial court found no merit in the Declarants' assertions that the sum was too uncertain or speculative to support the award or was not supported by sufficient evidence. (Trial court op. at 22-28, 31-32; F.F. Nos. 52, 54, 57, 78-85.)

After completion of post-trial proceedings, both the Association and the Declarants filed appeals that were transferred to this Court. These appeals are docketed at Nos. 960 and 961 C.D. 2017, respectively.


**Discussion**[3]

In its brief, the Association raises two issues for review, asking whether the trial court erred (1) in concluding that Ridings at Newlin was excepted from wholesale application of the UPCA pursuant to section 5102(a)(1) of the UPCA, and (2) in determining that the Declarants were not obligated to pay the common assessments.

In their brief, the Declarants raise two issues for review, asking whether the trial court erred (1) in concluding that a confidential/fiduciary relationship existed between the Association and them, and (2) in determining that the award of damages was supported by sufficient, competent evidence and was not against the weight of the evidence.

---

[3] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Department of Transportation*, 937 A.2d 1162, 1172 n.5 (Pa. Cmwlth. 2007).

5

The Association argues that the trial court erred in concluding that Ridings at Newlin was excepted from full application of the UPCA because it fell within the ambit of section 5102(a)(1) and, consequently, could receive only limited protection under the statute.

Entitled "Applicability," section 5102(a)(1) provides in pertinent part:

(a) General rule. — This subpart [*i.e.*, the UPCA] applies to all planned communities created within this Commonwealth after the effective date of this subpart; *but, if*:

(1) such a planned community *contains no more than 12 units* and is not subject to any rights under section 5215 (relating to subdivision or conversion of units) to subdivide units or to convert into common elements or under section 5211 (relating to conversion and expansion of flexible planned communities) to add additional real estate, create units or limited common elements within convertible real estate or withdraw real estate, *it is subject only to sections* 5105 (relating to separate titles and taxation), 5106 (relating to applicability of local ordinances, regulations and building codes), 5107 (relating to eminent domain) and 5218 (relating to easement to facilitate completion, conversion and expansion) unless the declaration provides that the entire subpart is applicable . . . .

68 Pa.C.S. §5102(a)(1) (emphasis added).

In contrast, subsection (a)(2) creates another exception where:

a planned community, regardless of the number of units, has common elements or limited common elements which include only storm water management facilities and related devices, real estate containing signage, lighting, landscaping, gates, walls, fences or monuments or open space and is not subject to any rights under section 5215 or under section

6

5211, it shall be subject only to the sections listed in paragraph (1), the provisions of sections 5103 (relating to definitions), 5104 (relating to variation by agreement), 5105, 5106, 5107, 5108 (relating to supplemental general principles of law applicable), 5109 (relating to construction against implicit repeal), 5110 (relating to uniformity of application and construction), 5111 (relating to severability), 5112 (relating to unconscionable agreement or term of contract), 5113 (relating to obligation of good faith) and 5114 (relating to remedies to be liberally administered) and the provisions of Chapter 53 (relating to management of planned community) and sections 5407 (relating to resales of units), 5408 (relating to escrow of deposits), 5409 (relating to release of liens) and 5411 (relating to warranty against structural defects) unless the declaration provides that the entire subpart is applicable.

68 Pa.C.S. §5102(a)(2).

Significantly, before the trial court, the Association argued that Ridings at Newlin did not meet the requirements for this particular exception "because it has an important, additional common element—a private road." (Trial court op. at 16-17.) The trial court agreed, and so do we. Although this provision accounts for a planned community "regardless of the number of units," the exception is based upon the limited nature of the common elements. On the other hand, subsection (a)(1) is based upon the number of units in a planned community. This distinction is what differentiates subsection (a)(1) from subsection (a)(2) and renders the two mutually exclusive.

Here, the trial court determined that, in the planned community at Ridings at Newlin, there were undisputedly nine units. (Trial court op. at 18.) The Association does not contend that the Declaration permits a unit to be subdivided into two or more units, common elements, or a combination of both under section 5215 of the UPCA. 68 Pa.C.S. §5215.[4] Nor does the Association argue that the Declaration contains an

---

[4] This section states,

7

explicit reservation for options to create additional units, limited common elements, or a combination of both, within convertible real estate, or to add additional real estate to the planned community pursuant to 5211 of the UPCA. 68 Pa.C.S. §5211.[5] Finally, there is no dispute that the Declaration does not state that the entire UPCA is applicable.

Through the process of elimination, the Association can take—and only takes—issue with the interpretive construction of the numerical quantifier in section 5102(a)(1), faulting the trial court's reference to the statutory provision as the "small community" exception. *See* Trial court op. at 17. According to the Association, the trial court erred in focusing on the total number of units at Ridings at Newlin, without considering the existence and scope of its common elements, and section 5102(a) is most appropriately dubbed a "*de minimis*" exception. In the words of the Association:

> If the declaration expressly so permits, a unit may be subdivided into two or more units or, in the case of a unit owned by a declarant, may be subdivided into two or more units, common elements or a combination of units and common elements. Subject to the provisions of the declaration and other provisions of law, upon application of a unit owner to subdivide a unit or upon application of a declarant to convert a unit, the association shall prepare, execute and record an amendment to the declaration, including the plats and plans, subdividing or converting that unit.

68 Pa.C.S. §5215(a).

[5] "To convert convertible real estate or add additional real estate pursuant to an option reserved under section 5206 (relating to contents of declaration for flexible planned communities), the declarant shall prepare, execute and record an amendment to the declaration under section 5219 (relating to amendment of declaration) and comply with section 5210 (relating to plats and plans). The declarant is the unit owner of any units thereby created." 68 Pa.C.S. §5211(a). Under section 5206(1), "[t]he declaration for a flexible planned community shall include, in addition to the matters specified in section 5205 (relating to contents of declaration; all planned communities) . . . [a]n explicit reservation of any options to create units, limited common elements or both within convertible real estate or to add additional real estate to or withdraw withdrawable real estate from the planned community." 68 Pa.C.S. §5206(1).

"Where a planned community already has extensive common elements in existence—as is the case with Ridings at Newlin—the *de minimis* exception for general applicability of the UPCA provided in section 5102(a)(1) cannot apply." (Association's brief at 30.) For support, the Association highlights the conjunctive "and," plus the phrases "common elements" and "limited common elements" in subsection (a)(1), juxtapositions the "regardless of the number of units" language in subsection (a)(2), and cites the Uniform Law Comment accompanying section 5102 as well as a portion of the legislative history.

We find no merit in this line of reasoning. Reading the statute in accordance with its plain language and grammatical structure, we conclude that the phrase in subsection (a)(1), "contains no more than 12 units," is not a misnomer and denotes a planned community that has 12 or less units. This construction is not undermined in any way by the "conversion" or "addition" of the "common elements" language mentioned in subsection (a)(1). When these phrases are properly viewed in the complete context of section 5102, and alongside sections 5215, 5206, 5211 of the UPCA, we can glean only one plausible interpretation of subsection (a)(1): the General Assembly wanted to ensure that the exception applies only to a planned community with a certain number of units in a situation where new units cannot later be added by way of converting undeveloped real estate or splitting an existing unit into two or more units. This makes sense for such action could potentially place the planned community above the 12-unit limitation and effectively allow a declarant to pick and choose what statutory duties and obligations it will have to follow prior to relinquishing control to an association.

Construing subsection (a)(1) in this manner, we conclude that the phrase "common elements" in that provision is simply a reference to the sections that permit

common elements to be included within a portion of a unit and allow a planned community to expand by creating new common elements in addition to new units. *See* 68 Pa.C.S. §§5206(1), 5211(a), 5215(a). Regardless of whether the planned community has what could be regarded as an abundance of common elements or no common elements at all, subsection (a)(1) pertains and applies to planned communities, such as Ridings at Newlin, that have 12 units or less. Any contemplation of the nature or extent of the common area infrastructure of a planned community is relevant solely to an analysis under subsection (a)(2), which, as the Association has conceded, is not at play here.

Because our reading of section 5102(a)(1) is based upon the clear and unambiguous language of that proviso, there is no legal justification for this Court to look beyond the statute and consider the Uniform Law Comment or legislative history. *See Commonwealth v. Dellisanti*, 876 A.2d 366, 369 (Pa. 2005); *Ramich v. Workers' Compensation Appeal Board (Schatz Electric, Inc.)*, 770 A.2d 318, 322 (Pa. 2001); *In re Henderson Estate*, 149 A.2d 892, 897 (Pa. 1959). Nonetheless, even if we were to consider these materials, we would not find that they provide sufficient indicia upon which to conclude that the phrase "no more than 12 units" was a legislative oversight or drafting error. From our perspective, the sources cited by the Association do not even remotely suggest that the numeral should be modified as written and should be construed by taking into consideration other factors such as the amount or degree of common areas that a planned community has.[6] Therefore, the Association's first issue fails.

---

[6] First, in relevant part, Uniform Law Comment 4 states: "Elaboration of the principles described in Comment 3 may be helpful. In this discussion which follows, however it should be borne in mind that *de minimis* planned communities and non-residential planned communities are subject to special rules set forth in subsections (a) and (e) and noted in the second paragraph of Comment 2.

Next, the Association argues that the trial court erred in determining that, under article IV, section 3 of the Declaration, the Declarants were not obligated to pay $4,000.00 in assessments when they collected a $4,000.00 assessment from a unit owner after conveying a property lot and unit in 2006. The Association contends that

For the sake of simplifying the analysis, those types of projects are not considered in the analysis which follows." 68 Pa.C.S. §5102, Uniform Law Comment 4. In turn, Comment 3 deals with the retroactive and prospective application of the UPCA and "adopts a novel three-step approach to planned communities created before the effective date"; likewise, the second paragraph of Comment 2 elucidates on the situation "where state legislation dealing with planned communities is already in place before [the UPCA] is adopted." 68 Pa.C.S. §5102, Uniform Law Comments 2-3. Moreover, subsection (a) states that the UPCA "applies to all planned communities created within this Commonwealth after the effective date," while subsection (e) clarifies that the UPCA generally "does not apply to a planned community in which all units are restricted exclusively to nonresidential use" or "to a planned community containing both units which are restricted exclusively to nonresidential use and other units which are not so restricted . . . ." 68 Pa.C.S. §5102(a), (e).

Hence, and on the whole, Comment 4 deals, in overwhelming measure, with the thorny issue of retroactive application of the UPCA. *See Little Mountain Community Association*, 92 A.3d at 1197-2000. In these circumstances, we conclude that the term "*de minimis*" merely reflects the drafters' particular choice of words to describe the planned communities that have 12 or less units and restricted/limited common areas as those concepts are further defined in subsections (1) and (2) of section 5102(a), respectively. *See supra* note 4. As such, Comment 4 does not shed any meaningful light on how the terms or phrases in those subsections should be interpreted.

Second, in discussing a legislative amendment to section 5102 in 1997, which dealt solely with the obligation of a declarant to provide notice that discloses and describes the common elements and their assessment costs to purchasers of a unit of a planned community that contains 12 or less units, Senator Hart remarked during floor debate: "[T]he bill is what would change the provisions within the [UPCA] to not require certain notification . . . . I think what the amendment does, Mr. President, is it [*i.e.*, the notice] describes the type of planned community more than the size of the planned community." (Association's brief at Appendix D, Legislative Journal—Senate, 181st Sess., December 8, 1999, at 1251.) As gleaned from these statements, the Senator was discussing a notification provision, and not the substantive contours for the exception for planned communities that have a certain number of units. Moreover, the proposed amendment to section 5102, although enacted into law, no longer exists and was deleted in 2004 with the passage of the current version of section 5102. *See* Act 1998-37 (S.B. 1175), P.L. 206, §1, *and compare with* Act 2004-189 (H.B. 1329), P.L. 1486, §1. Consequently, the comments of the legislator during floor debate are not relevant to our analysis of the statutory language. *See In re Martin Estate*, 74 A.2d 120, 122 (Pa. 1950).

11

this assessment was "an initial general assessment" that must be paid by both the lot owner and the Declarants. (Association's brief at 50.)

Article IV, section 3 of the Declaration states:

> Initial Assessment: Upon the sale of Lots 1 through 7 there will be an initial assessment levied by the Association in the amount of $4,000.00 for each lot, to initially fund the expenses as set forth in Paragraph 2 above. The assessment shall be collected at the time of settlement by the Association for each of said lots . . . .

(R.R. at 286a.)

In its opinion, the trial court succinctly yet ably disposed of this issue as follows:

> [T]he Declaration and its language at [a]rticle IV, [s]ection 3 deal[] with initial common assessments, [and] the court concludes that it does not support [the Association's] contention that once a single property was sold, [Declarants] then were obligated to pay common assessments on each of the other lots they then held. The language of [s]ection 3 requires there be a "sale" of a lot/property prior to the Association having the right or obligation to levy any assessment. Once that occurs, the time when such an assessment is to be made is at the time of settlement. This provision clearly contemplates, and the language provides, that the levying of the assessment will be in conjunction with the sale of each property to a third party, not upon [Declarants] in conjunction with the first sale.

(Trial court op. at 30.)

We concur with the trial court's analysis and conclusion, which is further supported by other sections of the Declaration. Pursuant to article I's definitions, "owners" are defined as "the record owner or owners of the title to any lot situated on the properties." (R.R. 284a.) Under article IV, section 4, if an assessment becomes delinquent, the "personal obligation of the then owner to pay such assessment . . . shall

12

remain his personal obligation." (R.R. at 287a.) In article II, section 1, it is stated that "[e]very person or entity who is an owner of any lot of the properties shall automatically become a member of the Association." *Id.* Given these sections, it is clear to us that only the owners/members of the Association are obligated to pay the assessments to the Association. Since the Declarants have conveyed their interest in the property at the time of settlement, they are not owners/members for purposes of imposing assessments.

The Association also argues that, independent of the Declaration, it has the authority and right to collect the assessment under section 5314 of the UPCA. However, as discussed above, this provision does not apply by virtue of the fact that the Association falls within the exception in section 5201(a)(1), and section 5314 is not one of the few provisions through which the Association can assert legal rights. The Association cites *Centennial Station Condominium Association v. Schaefer Company Builders*, 800 A.2d 379 (Pa. Cmwlth. 2002), but such reliance is misplaced. In that case, the declarant had to pay common assessments for units that were listed and declared on amended declarations as part of convertible real estate, but not yet built, under the Uniform Condominium Act (Act).[7] However, a provision in the Act specifically stated that in this particular situation, "the declarant is the owner of units created by the addition of additional real estate," *Centennial Station Condominium Association*, 800 A.2d at 384, and the declaration required all unit owners to pay assessments for common elements. While section 5211(a) of the UPCA is an analogous statutory provision, it is admittedly not applicable to this case because the Declaration does not contemplate that real estate will be subsequently converted into more units. Therefore, the Association's second issue lacks merit.

_____

[7] 68 Pa.C.S. §§3101-3414.

13

Accordingly, we affirm the trial court's order denying the Association's motion for post-trial relief.

**The Declarants' Appeal**

The Declarants first argue that the trial court erred in concluding that they owed the Association a fiduciary duty to act in good faith based upon the nature of their relationship and common law principles, emphasizing that the Association has no similar and cognizable claim under the UPCA. In the Declarants' view, the duty of good faith is implied in breach of contract claims and unique instances where one party places special trust and reliance on another party, akin to an attorney-client relationship, and that neither of these circumstances are present in this case. Noting that the Association based the pertinent averments in Count I on section 6.20 of the RESTATEMENT, the Declarants point out that this section has never been adopted or declared to be the law of the Commonwealth.

In *Little Mountain Community Association*, a planned community that was formed prior to the enactment of the UPCA filed suit against a developer and declarant. In the complaint, the association demanded an accounting of the fees collected and sought to transfer title ownership of the common facilities to itself. On appeal to the Superior Court, the sole, certified legal issue presented was whether the planned community could obtain the status of an "association" under section 5301 of the UPCA[8] and assert rights granted by the UPCA. Engaging in statutory interpretation,

---

[8] This section states,

> A unit owners' association shall be organized no later than the date the first unit in the planned community is conveyed to a person other than a successor declarant. The membership of the association at all times shall consist exclusively of all the unit owners or, following

14

the Superior Court determined that, pursuant to the provisions of the UPCA, section 5301 could not be applied retroactively to impose a requirement for the mandatory formation of an association. 92 A.3d at 1198-2000. Relevant for present purposes, the Superior Court also rejected the argument that section 6.20 of the RESTATEMENT could serve as "an independent legal basis for retroactive enforcement of the UPCA," 92 A.3d at 2000, and declined to adopt or apply section 6.20 of the RESTATEMENT, at least to the extent that it was relied upon to authorize retroactive application of the UPCA. However, significantly, the Superior Court stated that despite its holding, on remand, the planned community "may still be able to prove breach of fiduciary duty, promoter's duty, implied contract, or detrimental reliance, independently of the UPCA." *Little Mountain Community Association*, 92 A.3d at 1201 n.18. The Superior Court, therefore, acknowledged the possibility that the planned community may base viable claims on common law principles.

Here, the sections of the UPCA pertaining to a declarant's duty to act in good faith and liability for torts and contracts, *see* 68 Pa.C.S. §§5301, 5113(a),[9] do not

---

termination of the planned community, of all former unit owners entitled to distributions of proceeds under section 5218 (relating to easement to facilitate completion, conversion and expansion) or their heirs, successors or assigns. The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.

68 Pa.C.S. §5301.

[9] "Every contract or duty governed by this subpart imposes an obligation of good faith in its performance or enforcement." 68 Pa.C.S. §5301; *see* 68 Pa.C.S. §5412 ("If a declarant or any other person subject to this subpart violates any provision of this subpart or any provisions of the declaration or bylaws, any person or class of persons adversely affected by the violation has a claim for appropriate relief.").

"If the tort or breach of contract occurred during any period of declarant control under section 5303(c) (relating to executive board members and officers), the declarant is liable to the association

apply to the Association as a result of section 5102(a). However, just because a statute is, or certain provisions of a statute are, inapplicable to a party, this does not necessarily mean that the party is left without a remedy. In fact, our courts have concluded that the common law should fill the gap of statutory voids like the one in this case.

In *Lyman v. Boonin*, 635 A.2d 1029 (Pa. 1993), there was no statutory standard to evaluate claims by owners of a condominium unit against a condominium council because the condominium was created prior to the passage of the Act. Nonetheless, the Supreme Court surveyed decisional common law from other jurisdictions and, while referencing the inapplicable statute, devised the

> following rule to be applied in those situations not covered by the now enacted statute: judicial relief from the actions of condominium governing bodies will be available in those situations where the action of the governing body is unauthorized, or it is established that the action has been taken fraudulently, in bad faith, or constituted self-dealing.

*Lyman*, 635 A.2d at 1032.

Similarly, in *Pinecrest Lake Community Trust ex rel. Carroll v. Monroe County Board of Assessment Appeals*, 64 A.3d 71 (Pa. Cmwlth. 2013), the developer created and filed a Trust Agreement more than 12 years prior to the 1997 enactment of the UPCA, and the unit owners were the sole beneficiaries of the Trust. Noting that the pertinent provisions of the UPCA could not be applied retroactively to the facts of the case, this Court concluded that, under the common law, the trustees of the Trust owed a fiduciary duty to the unit owners. *See* 64 A.3d at 79-80; *see also Tooey v. AK Steel Corp.*, 81 A.3d 851 (Pa. 2003).

---

for all unreimbursed losses suffered by the association as a result of that tort or breach of contract, including costs and reasonable attorney fees." 68 Pa.C.S. §5113(a).

16

Following the footsteps of these decisions, we conclude that the UPCA does not bar the Association from pursuing common law claims against the Declarants. The issue, then, is whether the trial court erred in finding that the Declarants, prior to relinquishing control, stood in a confidential relationship with the Association sufficient to justify the imposition of fiduciary duties.

It is true, as the Declarants contend, that Pennsylvania law generally implies a duty of good faith and fair dealing in the performance of contractual duties. *See, e.g.*, *Herzog v. Herzog*, 887 A.2d 313, 317 (Pa. Super. 2005). However, a claim for breach of fiduciary duty sounds in tort, *see Mirizio v. Joseph*, 4 A.3d 1073, 1082-84 (Pa. Super. 2010), and the trial court focused on the nature of the relationship between the parties, not the Declaration as a contract, in order to find a confidential relationship and impose fiduciary duties. (Trial court op. at 22-23; Order, 2/21/2017, at 3.)

The courts of this Commonwealth have long recognized, under the common law, the existence of entities like common-interest or planned communities. *See, e.g.*, *Brentwater Homes, Inc. v. Weibley*, 369 A.2d 1172, 1175 (Pa. 1977); *Rybarchyk v. Pocono Summit Lake Property Owners Association*, 49 A.3d 31 (Pa. Cmwlth. 2012); *Spinnler Point Colony Association, Inc. v. Nash*, 689 A.2d 1026 (Pa. Cmwlth. 1997). Here, the Declaration confirms that the Declarants created what has traditionally been viewed at common law as a common-interest or planned community: the unit owners are made mandatory members of the Association; at Ridings at Newlin, there is common property and infrastructure to be shared by all; the unit owners must pay assessments to the Association for maintenance of the common properties; and the units are subject to restrictions and covenants. (R.R. at 283a-89a.) *See* Michael L. Lutz, *Comment: Common Interest Ownership in Pennsylvania: An Examination of*

17

*Statutory Reform and Implications for Practitioners*, 37 Duq. L. Rev. 465, 470-77 (1999) (discussing characteristics of planned communities).

Further, at common law,

> Courts were . . . called upon to fashion a body of law concerning the relationship between the developer and the association. Typically, at the beginning of the development process, the developer formed and retained control over the association. At some point in the process, the developer ceded control to a duly elected board of directors. The common law imposed on the developer the duty to create the association and to turn over control of association affairs to the board of directors after a time sufficient to protect the interests of the developer . . . . Before the transfer of control, the developer owed certain duties to the association including the duties to use (1) reasonable care in managing common property, (2) ensure that association finances were handled responsibly, (3) enforce the servitude regime, including payment of assessments, and (4) to disclose certain matters to the association. The developer could not modify the declaration if such a modification would have a material effect on the character of the development or place an unfair burden on existing owners unless the declaration specifically put the unit or lot owners on notice that the developer retained such an ability to modify.

*Id.* at 477-78 (footnotes omitted).

Our examination of the case law supports the view that, until a declarant/developer relinquishes control to an association, the declarant/developer owes the association and its members a fiduciary duty. "In most jurisdictions, the developer is a fiduciary acting on behalf of unknown persons who will purchase and become members of the association." *Raven's Cove Townhomes, Inc. v. Knuppe Development Co.*, 114 Cal. App. 3d 783, 799 (Cal. Ct. App. 1981). As such, a developer is liable to a homeowner's association "for breach of the basic fiduciary duty

18

to act in good faith, exercise proper management, and avoid conflicts of interest." *Cohen v. S&S Construction Co.*, 151 Cal. App. 3d 941, 945 (Cal. Ct. App. 1983).

In *Village at Camelback Property Owners Association Inc. v. Carr*, 538 A.2d 528 (Pa. Super. 1988), *aff'd*, 572 A.2d 1 (Pa. 1990) (per curiam), the Superior Court analyzed the legal issue of piercing the corporate veil. In doing so, the court determined, albeit with limited discussion, that a promoter of a corporation, specifically the developer of a residential townhouse development, owed a fiduciary duty to the members of an incorporated housing association when marketing the development to potential purchasers. 538 A.2d at 536.

In *Goddard v. Fairways Development General Partnership*, 426 S.E.2d. 828, 832 (S.C. Ct. App. 1993), the South Carolina Court of Appeals concluded that the declarants/developers of a planned unit development (PUD) had a fiduciary duty to insure that the common areas were in good repair at the time they were conveyed to the association, and that the declarants/developers breached this duty when they transferred substandard or deteriorated common areas to the association. In finding that the declarants/developers and the association were in a confidential relationship, the court reasoned through analogy:

> [O]ur Supreme Court held that the promoters of a corporation are fiduciaries to each other and to the corporation they are creating. Here, we think there is a corollary between the promoters of a corporation and the developers of a PUD. Both are entrusted by interested investors to bring about a viable organization to serve a specific function. Both should be expected to use good judgment and act in utmost good faith to complete the formation of their organizations.

*Id.* at 832 (citations omitted).

Similarly, in *Richard Gill Co. v. Jackson's Landing*, 758 S.W.2d 921 (Tex. App. 1988), an association brought suit against developers/declarants and

19

alleged, among other things, that the developers/declarants failed to properly maintain and document the records and accounting books of the housing project during the period of development. In finding that the developers/declarants were liable on this theory, the Texas Court of Appeals stated: "The owners of individual apartments who would later form the association put their trust in [the developers/declarants] and relied upon them to fairly and competently carry out their duties, and a fiduciary relationship was thus established between [them] and the owners." *Id.* at 924.

We find that these cases constitute persuasive authority and conclude that the Declarants and the Association were in a confidential relationship in which the Declarants assumed the role of a fiduciary and its concomitant duties. As mentioned above, the trial court found that the Declarants failed to properly maintain and complete the common area private roadway; circulated alternate versions of the Declaration and Bylaws, all of which contained deficiencies; failed to keep key organizational records and information; and provided unit owners with deficient community documents. (Trial court op. at 23; F.F. Nos. 47, 52, 54, 57-59, 61-62, 69.) Importantly, all of this occurred while the Association was under the "sole and direct control" of the Declarants, and the Declarants did not relinquish control to the Association. (Trial court op. at 22.)

Notably, the Declarants only challenge the trial court's determination that they owed the Association fiduciary duties and do not argue that the trial court erred in imposing the specific duties that it did. Having determined that the trial court did not error in finding that there was a confidential and fiduciary relationship between the Declarants and the Association, we will not address the matter further. The Declarants' first issue does not merit relief.

20

In their second issue, the Declarants assert that the trial court's award of damages with respect to the common driveway was not based on the evidence presented and was contrary to the weight of the evidence. We disagree. In support of their argument, the Declarants merely highlight issues that are to be resolved by the fact-finder, claiming that the Association's expert added new items for repair to his report as time went on and was directed to reassess the condition of the driveway by an attorney. The Declarants also question the accuracy of measurements taken by the Association's expert and whether his testimony is a fair portrayal of what is depicted in the photographic evidence.

To the extent that the record contains conflicting evidence and/or the Declarants challenge the veracity of the Association's expert testimony, or the accuracy of the photographs, these issues are not cognizable in a challenge to the sufficiency of the evidence. *See Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009).[10] It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. *Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1289 n.2 (Pa. Cmwlth. 2006). This Court, accordingly, cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court. *See id.* Inconsistencies in the evidence go to the weight of the evidence, *In re Petition of Viola*, 838 A.2d 21, 27 (Pa. Cmwlth. 2003), and we will respect a trial court's findings with regard to the credibility and weight of the evidence unless the Declarants can show that

_____

[10] An argument that evidence was "unbelievable" is one that "goes to the credibility of the witness's testimony, and is, therefore, not an attack on the sufficiency of the evidence," *Griffin*, 65 A.3d at 939, and, similarly, "[a]n argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence," *Gibbs*, 981 A.2d at 281-82 (citing and parenthesizing cases).

21

the court's determination "was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence." *J.J. DeLuca Co. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa. Super. 2012).

Upon our review, there is nothing in the record to indicate that the testimony of the Association's expert was so inconsistent or contradictory, or lacking a proper foundation, as to render it unworthy of belief as a matter of law. *See* R.R. at 63a. To the contrary, the trial court found that the Association's expert detailed the inadequacies with the roadway and opined that the cost of repair was $31,588.00. (F.F. Nos. 69, 72, 75-78.) These findings, in turn, are based upon substantial evidence. Therefore, it was within the exclusive province of the trial court to determine the credibility and weight of the expert's testimony and, having found that testimony credible, it was sufficient evidence upon which to base the damages award. As such, Declarants' second and final issue does not merit relief.

Accordingly, we affirm the trial court's order denying Declarants' post-trial motion for relief.

## Conclusion

For the foregoing reasons, we affirm the trial court's orders denying the post-trial motions filed by the Association and Declarants.

_____
PATRICIA A. McCULLOUGH, Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Laurel Road Homeowners | : | |
| Association, Inc., | : | |
| Appellant | : | |
| | : | No. 960 C.D. 2017 |
| v. | : | |
| | : | |
| William E. Freas and Nancy Freas | : | |
| | : | |
| Laurel Road Homeowners | : | |
| Association, Inc. | : | |
| | : | No. 961 C.D. 2017 |
| v. | : | |
| | : | |
| William E. Freas and Nancy Freas, | : | |
| Appellants | : | |

## ***ORDER***

AND NOW, this 26th day of July, 2018, the February 21, 2017 orders of the Court of Common Pleas of Chester County are hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge