IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Concord Hills Homeowners       :
Association,                     :
               Appellant     :
                          :
        v.               :      No. 1439 C.D. 2023
                          :      Submitted: February 4, 2025
Karen Hannig             :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT         FILED: March 19, 2025

Concord Hills Homeowners Association (Association) appeals an order of the Court of Common Pleas of Delaware County (trial court) that entered judgment in favor of Karen Hannig (Owner). The trial court denied the Association's claim for a judgment in the amount of $13,343.21 against Owner for unpaid assessments, fines, and expenses incurred by the Association. The trial court concluded that the Association's evidence did not prove that Owner had defaulted on any monthly assessments or maintenance obligations and, thus, the Association was not entitled to relief. Upon review, we affirm.

**Background**

The Association is a Pennsylvania non-profit corporation created in 1988 to operate the homeowner's association for Concord Hills, a planned community. The owners of units within Concord Hills are the members of the

Association.[1]  Owner, a member of the Association, owns the unit at 64 Eusden Drive.

In April 2021, the Association filed a complaint with a magisterial district judge, seeking a judgment against Owner in the amount of $2,245.53, plus costs, for non-payment of Association assessments and fines.  Judgment was entered against Owner in the amount of $2,129.11, and Owner appealed.

Thereafter, the Association filed a civil complaint with the trial court, seeking a judgment against Owner in the amount of $3,310.86, for unpaid assessments, late fees, fines, interest, and Association expenses.  A court-appointed arbitrator awarded the Association $3,000, which the Association appealed as inadequate.  Thereupon, the trial court conducted a hearing.

The Association presented the testimony of Julia Robbins, its property manager of six months' duration.  Robbins explained that she works with the Association's board of directors "to ensure that the rules and regulations are implemented throughout the community[.]"  Notes of Testimony, 10/24/2023, at 7 (N.T. __); Reproduced Record at 190a (R.R. __).  Robbins testified that unit owners are responsible for the maintenance of the exterior of their units, including yards and decks.  The Association's building engineer routinely inspects units, and if he discovers a need for maintenance, the Association sends a violation letter to the unit owner.

Robbins testified that on April 20, 2017, the Association sent a violation letter to Owner, stating that her driveway needed to be seal coated and that her back deck needed to be repaired and painted.  *See* R.R. 378a.  No fine was assessed.  Another violation letter was sent to Owner on September 6, 2017, relating to the

---

[1] CAMCO Management Company serves as the Association's management company.

deck. On May 8, 2018, the Association informed Owner that the work on her deck needed to be completed by July 1, 2018. On August 8, 2018, the Association informed Owner that because she "had not corrected the staining and painting of her back deck[,]" it assessed a $25 fine, which owner did not pay. N.T. 21-22; R.R. 204a-05a. In October of 2018, the Association assessed another $50 fine, finding the deck staining still deficient.[2] This was followed by two $100 fines. R.R. 383a.

In June of 2019, the Association notified Owner that she needed to replace flashing on her roof and repair her driveway. This was followed by a notice to complete the flashing and driveway by April 1, 2020. Robbins testified that no fines were imposed on Owner for these maintenance issues because Owner remedied the problem. N.T. 26; R.R. 209a.

Robbins next testified about Owner's 2018 settlement with the Association. In accordance with that oral agreement, the Association removed $579.29 in fines and late fees from Owner's account as of March 1, 2018. However, the Association did not agree to waive legal fees. As of November 19, 2020, the unpaid balance on those legal fees, as well as fines, interest, and late fees, had increased to $910.53. The Association hired counsel to collect the balance of $910.53, which it did by a complaint filed with the magisterial district court. Owner appealed the magistrate's judgment, and the Association then filed a civil action for judgment in the amount of $3,310.86, which included "accelerated assessments through the end of 2021." N.T. 38; R.R. 221a. A court-appointed arbitrator awarded the Association $3,000, but the Association appealed the arbitration award as inadequate.

---

[2] Although the Association's Board of Directors assessed this fine, it was not added to Owner's account. N.T. 22-23; R.R. 205a-06a.

Robbins testified that as of October 11, 2023, Owner owed the Association $2,610.53 for unpaid assessments, fines, late fees, and interest, and $8,948.08 in legal fees. The law firm's hourly fees ranged between $245 to $330 per hour. Robbins did not know how many of the hours billed by the law firm related to the Association's issues with Owner. The Association offered into evidence the notices it sent to Owner, the statement of Owner's account, and its legal invoices.

In response to questions from the trial court, Robbins testified that she did not know how many monthly assessments that Owner had missed, explaining that any payments received from Owner were first "applied [ ] to the late fees and fines." N.T. 54; R.R. 237a. When the Association initiated its action in the magisterial district court, it sought $910.53. As of the trial court proceeding, the Association sought $13,000.

On cross-examination, Robbins testified that the Association issued 17 late fees at $15 each, for a total of $255. These late fees were not based upon the monthly assessments. They were based on the outstanding balance on Owner's account. Robbins acknowledged that she did not know how many times Owner had been late with her monthly assessments.

Owner testified. She stated that, in or around 2017-2018, she was involved in a dispute with the Association. The Association filed a complaint with the magisterial district court, which it withdrew following a settlement of the parties. The Association's record of Owner's statement of account stated "[r]emove [v]iolations per [a]greement." R.R. 137a. Owner testified that she agreed to pay the Association $50, and, in exchange, the Association withdrew the complaint and zeroed out her account. As of March 2018, her account was current.

4

Owner testified that in August of 2018, she was assessed a $25 fine for not staining her deck. She did not pay the fine because she disputed the violation. She explained that she had "painted half the deck" by the date required by the Association but ran out of stain. N.T. 77; R.R. 260a. The following week, she finished staining the deck, but the management company did not do an inspection.

Owner testified that in June of 2019, she was fined $100 because of the issue identified with the flashing on her roof and her driveway. Upon receipt of this notice, she repaired the flashing herself and had her driveway seal coated.

Owner disputed the late charges on her assessments. She testified, for example, that she was charged a $15 late fee on April 17, 2019, but the Association cashed her check on April 9, 2019. The Association rules state that a payment is considered late "if it arrives after the 10th of the month." N.T. 82; R.R. 265a. On March 24, 2021, Owner sent a check to the Association in the amount of $65, and it was cashed on April 2, 2021; however, the Association never credited her account for that payment. In May 2023, Owner received notice that her monthly assessment payment had not cleared her bank account. In response, she remitted a doubled assessment payment the following month, which included the $15 late fee. Owner testified that she has always made her payments, and if she knew the payment was late, she paid the late fee. N.T. 84; R.R. 267a.

**Trial Court Decision**

On October 27, 2023, the trial court entered judgment in favor of Owner for the stated reason that "there was almost a complete absence of testimony as to what generated the alleged default in the first place." Trial Court Opinion and Order, 10/27/2023, at 1; R.R. 491a. The testimony established that Owner was assessed for alleged failure to stain her deck, to repair the flashing of her roof, and to seal coat

her driveway. Owner acknowledged receiving requests from the Association to make the repairs and testified that she did them. The Association did not call any witnesses or introduce any evidence to substantiate the alleged maintenance issues. Additionally, Owner testified that, with one exception, she always paid her monthly assessments on time. Simply, the Association failed to make its case. The trial court observed that it was "incredulous that the Association could incur so much [in legal fees] for such a minor issue." Trial Court Opinion and Order, 10/27/2023, at 2; R.R. 492a.

Thereafter, the trial court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a). Again, it explained that the record was "almost entirely devoid of testimony relative to [the Association's] claims for unpaid dues, late fees, maintenance or assessments." Trial Court Pa.R.A.P. 1925(a) Op. at 1. Although the Association claimed that Owner ignored its requests to make certain repairs, there was no direct evidence offered to support that conclusion. The Association did not produce photographs, and the Association's building engineer did not testify about his inspections. The Association's sole witness, Robbins, conceded she never made an inspection of the property herself.

As to the alleged unpaid assessments, the trial court credited Owner's testimony that she always paid her monthly assessments, including any late fees. The Association's witness, Robbins, did not know how many assessments were late or delinquent, admitting that she could not "speak to it specifically." Trial Court Pa.R.A.P. 1925(a) Op. at 2 (quoting N.T. 54; R.R. 237a).

The parties settled outstanding fines and late fees in March 2018. Thereafter, Owner received two fines. However, Owner remedied the property

6

maintenance issues, staining the deck on June 11, 2019, at a cost of $125, and repairing the roof at a cost of $650.57.

## Appeal

On appeal,[3] the Association raises five issues:

1.   Whether the [t]rial [c]ourt's October 27, 2023[,] Opinion and Order is inconsistent with the weight of the evidence and inconsistent with the applicable law[.]

2.   Whether the [t]rial [c]ourt erred as a matter of law by applying a clear and convincing standard rather than a preponderance of the evidence standard during the non-jury trial[.]

3.   Whether the [t]rial [c]ourt erred as a matter of law in determining that [Owner] was not bound by the provisions of the Association's [g]overning [d]ocuments and that [Owner] was justified in withholding payment of assessments owed to the Association[.]

4.   Whether the [t]rial [c]ourt erred as a matter of law in failing to acknowledge that [Owner] was delinquent in payment of assessments, and that the Association was entitled to assess the subsequent late fees and reasonable legal fees that resulted from [Owner's] failure to pay all [a]ssessments[.]

5.   Whether the [t]rial [c]ourt erred as a matter of law in failing to consider the application of payment required under [Section] 5315(i) of the Pennsylvania Uniform Planned Community Act[.][4]

Association Brief at 5-6.[5]

---

[3] This Court's review of a decision of the trial court in a non-jury trial determines "whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error of law." *The Ridings at Whitpain Homeowners Association v. Schiller*, 811 A.2d 1111, 1113 (Pa. Cmwlth. 2002).

[4] 68 Pa. C.S. §5315(i).

[5] Owner did not file a brief as instructed by the Court. Accordingly, by Order of July 31, 2024, Owner was precluded from filing a brief and participating in oral argument.

**Relevant Legal Authority**

The Uniform Planned Community Act (Planned Community Act), 68 Pa. C.S. §§5101-5414, applies to planned communities created after 1997. Additionally, "certain of its provisions apply to homeowners' associations founded before the enactment of the [Planned Community] Act; other provisions of the [Planned Community] Act do not apply to homeowners' associations unless adopted as part of an association's by-laws. Section 5102(b)-(b.1) of the [Planned Community] Act, 68 Pa. C.S. §5102(b)-(b.1)." *Barcia v. Fenlon*, 37 A.3d 1, 3 (Pa. Cmwlth. 2012).

Section 5302(a)(11) of the Planned Community Act provides that an association may "[i]mpose charges for late payment of assessment and, after notice and an opportunity to be heard: (i) levy reasonable fines for *violations of the declaration, bylaws*[,] *and rules and regulations* of the association." 68 Pa. C.S. §5302(a)(11) (emphasis added). Likewise, the Planned Community Act allows a homeowners' association to recover its costs of collection or enforcement from a unit owner. It states, in relevant part, as follows:

> Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged under [68 Pa. C.S. §]5302(a)(10), (11) and (12) (relating to power of unit owners' association) and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due to the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as assessments under this section . . . .

68 Pa. C.S. §5315(a).

The Association's Declaration of Covenants, Easements and Restrictions provides, with regard to maintenance of property:

Each [o]wner shall maintain their Private Yard,[6] the exterior of their Unit and all improvements thereon, and keep the aforesaid in good order and free from debris. It shall be each [o]wner's responsibility to water his own Private Yard. In the event that an [o]wner fails to maintain their Private Yard, the exterior of their Unit and/or the improvement situated thereon as provided herein, the Association, after ten (10) days written Notice of the [o]wner, shall have the right to enter upon said Private Yard and correct, repair or restore the Private Yard, the exterior of the Unit and all improvements erected thereon. All costs, expenses and fees incurred by the Association arising from or related to said corrections, repairs and/or restoration shall constitute a lien against the Unit appurtenant to said Private Yard and collectible as and in the same manner of an assessment.

Declaration, Article IV, Section 1(v); R.R. 48a, 68a.

The By Laws of the Association establish the member's obligation to pay monthly assessments. They state as follows:

As more fully provided in the Declaration, each member is obligated to pay to the Association, annual and special assessments which are secured by a continuing lien upon the property against which the assessment is made. Any assessments which are not paid when due shall be delinquent. If the assessment is not paid within ten (10) days after the due date, the assessment shall bear interest from the date of delinquency at the rate of nine percent per annum[] and the Association may bring an action at law against the [o]wner personally obligated to pay the same or foreclose the lien against the property, and interest, costs and reasonable attorney's fees of any such action shall be added to the amount of such assessment. No [o]wner may waiver [sic] or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his Lot.

---

[6] "Private Yard" is defined in the Declaration as "those portions of the plot of land owned by an owner in fee simple title as shown on the Title Plan of Property." Declaration, Article I(O); R.R. 296a.

Association By Laws, Article XI; R.R. 110a.  Finally, the Association's regulation regarding application of payments provides, in pertinent part:

> The Association will apply assessment payments in the following order:
>
> 1. Late fees
> 2. Attorney fees and collection costs
> 3. Restoration Assessment (In-Unit Maintenance)
> 4. Monthly assessment
> 5. Special Assessments (if any)
> 6. Fines

R.R. 114a.

With this background, we consider the Association's issues on appeal.

**Analysis**

In its first issue, the Association argues that the trial court's ruling was inconsistent with the Planned Community Act, the Association's By Laws, and the relevant evidence.  The Association contends that it had authority to pursue Owner's delinquency for unpaid assessments, fees, charges, late charges, fines, interest, and the reasonable expenses for their collection, including legal fees.  Although Owner's prior fines and fees had been removed under an oral agreement of March 1, 2018, that agreement did not cover the Association's legal expenses.  The Association notes that Owner admitted that she did not pay the maintenance fines, which she disputed.  In any case, regardless of whether Owner's delinquency stemmed from unpaid fines or assessments, the Association is entitled to reimbursement of reasonable legal fees.

As the moving party, the Association had the burden of proving that Owner was liable for, and failed to pay, the assessments, fines, and late fees.  *See generally Logans' Reserve Homeowners' Association v. McCabe*, 152 A.3d 1094 (Pa.

10

Cmwlth. 2017). Robbins testified that Owner's delinquency began on July 12, 2018, because she did not pay the legal fees arising from the March 2018 settlement. The record shows a $135.80 charge on Owner's statement of account on July 12, 2018, described as "B&C Legal Fees – Complaint Filing Fee & Postage (December 2017)." R.R. 355a. On June 19, 2019, a charge of $134.73 is shown on Owner's statement of account, described as "Binder & Canno Inv#1771 – Legal Fees." R.R. 357a. A November 2018 invoice (Invoice #1771) shows the following charges:

> APRIL EXPENSES paid by Binder & Canno: Hannig - $.54 (postage)[.]
>
> JULY EXPENSES paid by Binder & Canno: Hannig - $134.19 (complaint filing fee and postage)[.]

R.R. 421a-22a. These charges on Owner's statement of account appear to be for the same matter, *i.e.*, legal expenses associated with the March 2018 settlement. Owner testified that she agreed to pay the Association $50, and, in exchange, the Association withdrew the complaint and zeroed out her account. Robbins, the Association's witness, did not know the terms of the settlement and could not confirm that it required Owner to pay the Association's legal expenses. The trial court concluded that the Association's evidence did not prove that Owner was obligated to pay the Association for its legal expenses incurred in the March 2018 settlement, and we agree with that conclusion.

Robbins testified that there were several times that Owner did not pay her monthly assessments on time, but she could not identify a single untimely payment of a monthly assessment. Owner disputed Robbins' claim, testifying she always made her payments, and if she knew the payment was late, she paid the late fee. N.T. 84; R.R. 267a. Owner testified that she was charged a late fee of $15 on April 17, 2019, but the Association cashed the check for her assessment on April 9,

11

2019. In May 2023, Owner testified that when she learned that her monthly assessment payment had not cleared her bank, she made a double payment with the following month's assessment and included the $15 late fee. R.R. 486a. We discern no error in the trial court's determination that the Association did not establish by a preponderance of the evidence that Owner was properly assessed a fine for late payment of her monthly assessment.

As to Owner's maintenance violations, the Association relied solely on the notices that it sent to Owner. Robbins acknowledged that she did not inspect Owner's unit. Robbins stated that the Association's building engineer did property inspections, but he did not testify. The Association offered no photographs or other evidence, such as eyewitness testimony, to establish any problems with Owner's deck, driveway, or roof flashing. The notices establish no more than the Association's claim.

Owner testified that upon receiving a notice about her deck, she responded. By the date demanded by the Association, she completed half of the project. Because she ran out of stain, she finished the job the following week. Owner testified that the Association never "came back" to inspect the work. N.T. 77; R.R. 260a. Rather, it sent her two more letters, one of which assessed a fine, requesting, again, that she stain/paint her back deck. Owner testified that when she received a letter to "replace front flashing by roof" and "repair and seal coat driveway," she did so. R.R. 384a. Four months later, the Association again notified Owner that she needed to "replace front flashing by roof" and "repair and seal coat driveway" by April 1, 2020. R.R. 385a. Owner testified, however, that by that time, she had already completed repairs. She also presented a copy of a check showing that on June 28, 2019, she paid to have her driveway repaired and seal coated. Owner

testified that she repaired the front flashing by the roof and produced a copy of a check showing payment to a roofing company in May of 2020. The trial court credited Owner's testimony and accepted her documentary evidence.

The trial court, sitting as the fact-finder, was free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. *Laurel Road Homeowners Association, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018). This Court is bound by the trial court's findings of fact unless they are not based on substantial evidence in the record. *Big Bass Lake Community Association v. Warren*, 23 A.3d 619, 625 (Pa. Cmwlth. 2011). Likewise, we are bound by the trial court's credibility determinations unless it can be shown that the trial court's "determination 'was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.' *J.J. DeLuca Company v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa. Super. 2012)." *Laurel Road Homeowners Association*, 191 A.3d at 952.

Here, the trial court credited Owner's testimony that she had completed the maintenance as required. Trial Court Opinion and Order, 10/27/2023, at 1; R.R. 491a. We agree with the trial court that the Association did not establish by a preponderance of the evidence that Owner violated the Declaration by failing to make repairs or by not paying the monthly assessments. Because the Association did not establish a violation, it lacked authority to assess fines, fees, interest, or collection costs to Owner.

In its second issue, the Association argues that the trial court imposed a clear and convincing burden of proof upon it, which was in error. The Association bases this argument on the trial court's statement that the Association did not provide photographs of the violations. The Association contends that the notices of violation

13

issued to Owner and the account statements were sufficient to establish a violation. Moreover, Owner admitted receiving the notices of violation and acknowledged that her repair to her deck was not completed on time.

In its October 27, 2023, Opinion and Order, the trial court stated that it found that the Association failed to establish its claim "by a reasonable preponderance of evidence[.]" Trial Court Opinion and Order, 10/27/2023, at 2. On its face, there is no merit to the Association's claim that the trial court imposed a "clear and convincing" evidentiary standard of proof upon the Association.

Further, the trial court credited Owner's testimony that she made the repairs to her deck, roof, and driveway, which was not contradicted by testimonial or documentary evidence, such as photographs. The trial court found that the Association's notices to Owner did not, in themselves, establish a violation. These findings and conclusions of the trial court were fully consonant with a preponderance of evidence burden of proof.

**Conclusion**

After a bench trial, the trial court held that the Association failed to make its case that Owner violated her obligations to make monthly assessment payments and to maintain her unit. As such, the Association was not entitled to judgment. We discern no error in its holding and, thus, affirm the order.[7]

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[7] Because we determine that the Association did not establish by preponderance of the evidence a violation by Owner, we need not address the Association's other issues regarding whether Owner was justified in withholding payment of assessments, whether the Association could assess late fees and reasonable legal fees, and whether the trial court should have considered the application of payments received from Owner in accordance with Section 5315(i) of the Planned Community Act, 68 Pa. C.S. §5315(i).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Concord Hills Homeowners     :
Association,     :
              Appellant     :
    :
        v.     :     No. 1439 C.D. 2023
    :
Karen Hannig     :

# **O R D E R**

AND NOW, this 19th day of March, 2025, the Court of Common Pleas of Delaware County, dated October 27, 2023, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita