Harold B. RICE

v.

**COMPRO DISTRIBUTING, INC., t/d/b/a TC Construction & Development Co., and Lycoming County Tax Claim Bureau.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 4, 2006.

Decided May 31, 2006.

Reargument Denied July 20, 2006.

James D. Casale, Williamsport, for appellant.

Fred A. Holland, Williamsport, for appellee, Harold B. Rice.

Peter Burchanowski, Williamsport, for appellee, Lycoming County Tax Claim Bureau.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

Compro Distributing, Inc. (Purchaser), the successful bidder at an upset tax sale for two parcels owned by Harold B. Rice (Rice), appeals from an opinion and order of the Court of Common Pleas of Lycoming County (trial court), which set aside the upset tax sale after reasoning that the Lycoming County Tax Claim Bureau (Bureau) did not exercise reasonable efforts to discover Rice's whereabouts and give him notice as required by Section 607.1 of the Real Estate Tax Sale Law (Law).[1]

Rice owned two unimproved parcels of land, which were enrolled in the "Clean and Green" program[2] in Nippenose Township, Lycoming County, for which he became delinquent in the payment of taxes for the years 2001 and 2002. Rice had previously relied on his wife to pay real estate tax bills; she passed away in 2001. (Trial Ct. Finding of Fact (FOF) ¶ 17.)

On September 18, 2003, the Bureau sold the properties at an upset tax sale for their 2001 delinquent taxes. Purchaser paid $332.38 for one parcel, and $1,500.00 for the other parcel, which were subsequently consolidated at the Purchaser's request by the Bureau, and a Decree Nisi was signed by the trial court on October 14, 2003. The Lycoming County Prothonotary entered a Decree of Absolute Confirmation of the upset tax sale on November 19, 2003. On February 11, 2004, Rice filed a Petition to Set Aside Tax Sale (Petition), asserting that he never received the statutorily required notice.

In his Petition, Rice averred, *inter alia,* that the notice sent by the Bureau, which was addressed to "Harold B. Rice at P.O. Box 295, Montoursville, PA 17754," was deficient because it was not sent to his current address, which is 512 Pinnacle Lane, Mifflinburg, PA.[3] The parties do not dispute that, in May 2000, Rice had filed a change of address form with the Montoursville Postmaster reflecting his Mifflinburg address.

For unpaid 2001 taxes, the Bureau sent notices to Rice at his P.O. Box on February 7, 2002, April 24, 2003, June 5, 2003, and August 28, 2003. The Post Office returned each as undeliverable; however, when the notice mailed on August 28, 2003 was returned as undeliverable, the Post Office included the notation "F.O.E.," which the Bureau understands to mean the forwarding address order for that address had expired. (FOF ¶ 24.) Several months earlier, the Post Office returned a notice the Bureau had sent for Rice's 2002 delinquent taxes. That notice, like the August 28, 2003 notice, had an "F.O.E." marking on it. The Bureau maintained copies of

---

1. Act of July 7, 1947, P.L. 1368, *as amended,* added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

2. Act of December 19, 1974, P.L. 973, *as amended,* 72 P.S. §§ 5490.1–5490.13 (commonly referred to as "Clean and Green").

3. In its brief to this Court, the Bureau adopts the trial court's findings of fact, adding only that Rice's mailing address in May 2000 was in Union County. (Bureau Br. at 1.)

both of these notices, marked with the "F.O.E." notation, in the same property folder in the Bureau's office.

Until it received the "F.O.E." notation on the August 28, 2003 notice, the Bureau's efforts to ascertain Rice's address consisted of verifying with the County Assessment Office that the P.O. Box corresponded with Rice's address as shown on the assessment records. After receiving the "F.O.E." notation in August 2003, the Bureau's efforts to ascertain Rice's current address consisted of checking: (1) two local telephone directories for the Williamsport area; (2) the address on file with the Lycoming County Assessment Office; (3) filings or markings on files that could determine a more accurate address in the Office of the Prothonotary and the Recorder of Deeds; and (4) the Pennsylvania criminal record computer index, known as "J–Net," which would have revealed any "Harold B. Rice" holding a Pennsylvania driver's license and his address. (FOF ¶ 26.) Unlike the first three items checked by the Bureau, a review of J–Net records is beyond the mandatory minimum search required by Section 607.1 of the Law.

The trial court set aside the upset sale because it concluded that, after receiving the "F.O.E." notation, the Bureau did not exercise reasonable efforts to notify Rice of the pending upset tax sale. (Trial Ct. Op. at 10.) The court "found significant" that the Bureau received two notices returned as undeliverable from the Post Office, one for Rice's 2001 taxes and one for his 2002 taxes, with the "F.O.E." notation. (Trial Ct. Op. at 10.) The trial court reasoned that, once the Bureau received the second "F.O.E." indication in August 2003,

it knew it had a responsibility to go beyond the statutorily mandated minimum requirements to conduct a reasonable investigation. The trial court did not consider the Bureau's utilization of the J–Net system, which it acknowledged as one-step beyond the minimum effort, as sufficient under the circumstances. (Trial Ct. Op. at 11–12.)

While recognizing that the Bureau did "act in a good faith manner in this matter," the trial court felt that a reasonable search would have included: contacting the small post office to see if anyone had knowledge or retained records of Rice's current residence; contacting the local tax collector, who might have provided information on contacting Rice or Rice's relatives, neighbors, friends, or employers (Trial Ct. Op. at 12, 15); and, using an internet phone directory, which was known and used at the time of the upset sale by the Bureau's Director for his personal use (Trial Ct. Op. at 12–14). With no evidence that the Bureau made an inquiry to the postal authority, contacted the Local Tax Collector, or utilized an internet telephone directory (Trial Ct. Op. at 12–14), the trial court reasoned that the Bureau's efforts to find Rice's address, after receiving the two "F.O.E." indications, did not satisfy the requirements of due process. (Trial Court Op. at 15–16). Therefore, the trial court set aside the real estate tax sale of Rice's two parcels. Purchaser appeals the trial court's decision to this Court.

Purchaser argues here that the trial court erred by: (1) concluding that the Bureau's efforts to locate Rice were not reasonable; and (2) basing its final decision on testimony not introduced at trial.[4]

4. In his brief to this Court, Rice raises the issue of whether Purchaser's failure to file post-trial motions precludes it from having standing on appeal. Rice asserts that before entering a final, appealable judgment, the tri-

al court must have the opportunity to review its findings of fact and conclusions of law, which it did not have here. In support, Rice cites to *Motorists Mutual Insurance Co. v. Pinkerton*, 574 Pa. 333, 343, 830 A.2d 958,

■ We begin by reiterating that, in tax sale cases, it is well-established that this Court's review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence. *In re Tax Sale of Real Prop. Situated in Jefferson Twp. (Appeal of Ruffner)*, 828 A.2d 475, 478, n. 6 (Pa. Cmwlth.2003), *aff'd*, 580 Pa. 63, 859 A.2d 471 (2004). The trial court, as the finder of fact, has exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence presented. *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa.Cmwlth.2003).

■ The requirements for providing notice to owners of property prior to commencing with an upset tax sale are established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by the Law. Due process requires that the Bureau, before commencing with a tax sale, "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the act and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. ——, 126 S.Ct. 1708, 164 L.Ed.2d 415, No. 04–1477, slip. op. at 4 (decided April 26, 2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Section 602 of the Law requires the Bureau to provide three different forms of notice before commencing with an upset tax sale: (1) publication in two separate newspapers; (2) posting of notice on the property to be sold; and (3) mailing notice to the owner of the property. 72 P.S. § 5860.602. It is undisputed that the Bureau complied with Section 602 of the Law.

In addition to those statutorily mandated forms of notice, Section 607.1 of the Law also requires:

(a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner ... and such mailed notification is ... returned without the required receipted personal signature of the addressee ... then, before the tax sale can be conducted or confirmed, the bureau must exercise **reasonable efforts** to discover the whereabouts of such person or entity and notify him. The bureau's efforts **shall include, but not necessarily be restricted to,** a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added). In *Appeal of Ruffner*, this Court succinctly summarized the law on conducting a rea-

---

964 (2003), which stated that "orders following trials on stipulated facts must be treated just like orders following other trials, i.e., in both situations, parties who wish to appeal must first file post-trial motions."

We find no merit in Rice's argument. As explained in the note to Pa. R.C.P. No. 227.1(c), "[a] motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice." Because this case involved a petition, post-trial motions were not needed.

sonable investigation for an owner's current address as:

A taxing bureau's duty to investigate such matters is confined to determining the owners of record and then to use ordinary **common sense business practices** to ascertain proper addresses where notice of the tax sale may be given. Where notice is obviously not effectively reaching the owners of record, the taxing bureau must go **beyond the mere ceremonial act of notice** by certified mail. However, due process does not require the taxing bureau to perform the equivalent of a title search or to make decisions to quiet title.

828 A.2d at 479 (citations and footnotes omitted and emphasis added); *see also, Jones,* 547 U.S. at ——, 126 S.Ct. at 1718 (reasoning that "[w]hat steps are reasonable in response to new information depends upon what the new information reveals.").

▄▄▄ Furthermore, the Bureau is required to strictly adhere to the notice provisions of the Law, because the tax sale laws were enacted with the primary purpose of insuring the collection of taxes, and not to strip away citizens' property rights. *Rivera v. Carbon County Tax Claim Bureau,* 857 A.2d 208, 214 (Pa.Cmwlth.2004). "Notice to owners of an impending sale of their properties is a duty requiring strict compliance in order to guard against the deprivation of property without due process. Thus, the focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the statute." *Smith,* 834 A.2d at 1251 (citations omitted). The Pennsylvania Supreme Court also has instructed us that "[t]he strict provisions of [the Law] were never meant to punish taxpayers who omitted through oversight or error ... to pay their taxes." *In re*

*Return of Sale of Tax Claim Bureau (Ross Appeal),* 366 Pa. 100, 107, 76 A.2d 749, 753 (1950). Accordingly, the Bureau had the burden of establishing that it complied with the specific requirements of Section 602 and the reasonable efforts requirements of Section 607.1.

Purchaser argues that the additional searches described in the trial court's decision go beyond what was reasonable for the Bureau to do at the time of the upset sale, and impermissibly delves into what the Bureau, in hindsight, could have done. Purchaser notes that the trial court actually stated in its opinion that the Bureau went beyond the statutory mandates for the provision of notice by utilizing the J–Net system. As to whether use of an internet telephone directory would have been reasonable, Purchaser cites *Appeal of Ruffner* (reasoning there was no indication that the owner's mailing address was incorrect and that a requirement to check any records outside of the county through the internet was extraordinary, and not reasonable) for the proposition that this Court has already found that a tax claim bureau is not *required* to utilize an internet search to conduct a reasonable search pursuant to Section 607.1 of the Law. Purchaser notes that the likelihood of success by making inquiries of the Tax Collector was speculative, even in a small rural community.

Purchaser believes this case is indistinguishable from *In re Sale of Property of Dalessio,* 657 A.2d 1386 (Pa.Cmwlth.1995). In *Dalessio,* after sending notice of the tax sale via certified mail, the tax claim bureau received a return notice with the notation "FWD. ORD. EXP.," and then attempted to locate the owner's current address by searching: (1) telephone directories; (2) county-wide occupation records; (3) county-wide real estate assessment records; (4) tax collectors' records; (5) voter's registra-

tion records; and (6) register and recorder's office records. *Id.* at 1388, n. 9, 1388–89. All of these attempts proved futile, and the property, which consisted of an oil and gas estate on approximately three-hundred acres, was sold at an upset tax sale. Upon learning of the sale of his property, one of the owners filed exceptions to the tax sale, which the trial court subsequently dismissed. This Court affirmed the trial court's decision to dismiss the exceptions, reasoning that, despite the owner's contention of the possible existence of other means of inquiry, it could not conclude that the tax claim bureau's efforts to locate the owner's current address were not reasonable. *Id.* at 1389.

Countering Purchaser's contentions, Rice argues that "the trial court was well within its discretion when it determined that the [Bureau], having made all efforts at notice enumerated in [Section 607.1 of the Law], along with some additional, non-enumerated efforts, nevertheless failed to make all reasonable efforts to locate and serve notice...." (Rice Br. at 3.) To support his argument, Rice cites to the "strong language" found in *Ross Appeal,* which emphasizes the primacy of property rights and the protection offered to owners by the Due Process clause. (Rice Br. at 3.) Rice also cites *Krawec v. Carbon County Tax Claim Bureau,* 842 A.2d 520 (Pa.Cmwlth.2004), which held that the tax claim bureau had to be cognizant of the unique facts and circumstances of the case and that "ordinary common sense business practices" would dictate that the bu-

reau inquire of the county register of wills after notices to the owner of record were returned with the notation that the addressee was deceased. Using *Krawec* for support, Rice argues that the trial court correctly took into consideration the unique facts and circumstances of the case when it determined that the Bureau was required to do more to satisfy the reasonable investigation requirement of Section 607.1 of the Law.

The Bureau agrees "that in some cases it would make eminent common sense to pursue leads to an owner's whereabouts that would not necessarily make sense in other different situations." (Bureau Br. at 8.) The Bureau argues, however, that this case is more akin to cases such as *Dalessio,* where other methods, in hindsight, may have been successful, but at the time of sale were beyond the reasonable efforts required to satisfy due process.[5] The Bureau asserts that if this Court were to rule that it should have conducted an internet search, such a ruling would establish a new standard requiring the future use of the internet in all tax sales where certified mail is returned unsigned. (Bureau Br. at 12.) Accordingly, the Bureau posits, "what more could the [Bureau] reasonably be asked to do that it had not already done, to locate the taxpayer who moved out of the county, whose forwarding address had expired and who did not have a Pennsylvania driver's license." (Bureau Br. at 13.)

---

5. The Bureau also cites to *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137 (Pa. Cmwlth.1997) (finding that the tax claim bureau, by mailing notice to last owner of record prior to tax sale, did not fail to conduct a reasonable search for the current owner of property where that owner had failed to timely record his quitclaim deed, as directed by prior court order), and *In re Tax Claim Bureau of Schuylkill County Sale of Sept. 29,* *2000 (Appeal of Spotts),* 798 A.2d 845 (Pa. Cmwlth.2002) (reasoning that, because the notices were signed for and received by the deceased property owners' spouses residing in other states, the tax claim bureau had no duty to research in those other states to determine if the spouses were the true heirs), to support its assertion that the steps it took where reasonable.

■ The limits of our review constrain us to affirm the trial court. Based on the unique and particular facts of this case, we cannot say that the trial court abused its discretion, *clearly* erred as a matter of law, or rendered a decision with a lack of supporting evidence.

Due process and Section 607.1 of the Law required the Bureau to go beyond the statutorily prescribed forms of notice. *Jones; Krawec.* The Bureau had the burden of establishing before the trial court that it did, in fact, exercise reasonable efforts to ascertain the whereabouts and provide notice of the upset sale to Rice. *Krawec,* 842 A.2d at 523; *Smith.* Case law is clear that a tax claim bureau is not *required* to utilize an out-of-county internet search to conduct a reasonable search pursuant to Section 607.1 of the Law. *Appeal of Ruffner.* However, the Bureau, after receiving the "F.O.E." notations, had to be cognizant of the unique facts and circumstances of the case, including the Borough's relatively small size, when setting the parameters of its reasonable investigation. *Krawec.* Despite going one-step beyond the statutorily mandated minimum by searching the J–Net system, the trial court reasoned that, without an indication that the Bureau made further searches, such as an inquiry to the postal authority or contacting the Local Tax Collector, the Bureau failed to meet its burden. We cannot say this was an abuse of discretion, a clear error of law or a decision rendered without supporting evidence. *See also Parkton Enterprises, Inc. v. Krulac,* 865 A.2d 295 (Pa.Cmwlth.2005) (affirming the trial court and holding that a reasonable investigation to find the current owner required the tax claim bureau to inquire into the identity of the purchaser of that property at a sheriff's sale conducted less than one month before the scheduled tax sale); *Murphy v. Monroe County Tax Claim Bureau,* 784 A.2d 878 (Pa.

Cmwlth.2001) (affirming the trial court and holding that the tax claim bureau had a duty to follow up on its unanswered written inquiry to the owner's property owner association). To hold otherwise, would simply be a substitution of our judgment for that of the trial court, which we cannot do. *Smith.*

■ Next, Purchaser argues that the trial court's "speculation" that Rice's current mailing address could have been ascertained by calling the local Post Office or making inquiries based on information provided by the Tax Collector is outside the scope of the testimony produced at trial. Purchaser contends that the trial court erred when it based its decision on those non-record, speculative facts. Purchaser believes the trial court's reliance on evidence not supported in the record is reversible error and cause for remand. We disagree.

The trial court's "speculation" as to the outcome of what it believed were "reasonable searches" had no bearing on the court's final decision because it is the reasonableness of the effort that is important, not whether it would have led to discovery of the address. *See Smith,* 834 A.2d at 1251–52; *Jones,* 547 U.S. at ——, 126 S.Ct. at 1717 (reasoning that "the constitutionality of a particular procedure for notice is assessed *ex ante,* rather than *post hoc* ").

Therefore, in accordance with the foregoing analysis, we affirm the trial court.

### ORDER

**NOW,** May 31, 2006, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter is hereby AFFIRMED.