# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maribel Ruiz Gutierrez, :
                Appellant :
                   :
            v. : No. 430 C.D. 2020
                  : ARGUED: May 10, 2021
Washington County Tax Claim Bureau :
and Bigger and Better Rental, LLC :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**               **FILED: June 10, 2021**

Maribel Ruiz Gutierrez appeals from an order of the Court of Common Pleas of Washington County denying her petition to set aside tax sale of a mobile home. Where the Washington County Tax Claim Bureau (Tax Claim Bureau) failed to comply with Section 601(a)(3) of the Real Estate Tax Sale Law (Tax Sale Law)[1] by failing to personally serve Gutierrez with notice of the impending tax sale or by establishing good cause for a waiver of personal service, we reverse.

In October 2015, Gutierrez bought a mobile home from Marjorie Morris. (Trial Ct.'s Mar. 20, 2020, Op. at 1.) The typewritten sale document provides: "Received payment in full from Maribel Ruiz & Jose Juan Coria for the 1970 Croydon mobile home located at 102 Hidden Valley Drive, Finleyville, PA

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.601(a)(3).

15332, sold as is where is on the 23rd day of October, 2015. Marjorie Morris."
(Sept. 30, 2019, Hr'g, Ex. A at 1; Reproduced R. "R.R." at 117a.)

On November 5, 2015, the Pennsylvania Department of Transportation issued a title for the mobile home to Maribee Ruiz Gutierrez.[2] (Trial Ct.'s Op. at 1.) The title states the registered owner's address as 45 Hidden Valley Drive, body type as "MH," odometer miles as exempt, and "Date PA Titled" as April 1, 1970.[3] (Ex. B at 1; R.R. at 118a.) Notwithstanding the fact that the title does not indicate whether the mobile home was affixed to realty, two photographs depict the mobile home at 102 Hidden Valley Drive with an attached carport and an apron around the bottom. (Exs. TC-1 and TC-2; Original R. "O.R." Ex. Packet.)[4] Consequently, Morris as the transferor should have obtained a tax status certificate from the Tax Claim Bureau and provided it to both the Department and Gutierrez as the transferee.[5] However,

---

[2] There is no dispute that Maribee Ruiz Gutierrez is Maribel Ruiz Gutierrez.

[3] Gutierrez testified at the 2019 hearing that 45 Hidden Valley Drive was her parents' home and that she had lived there "[s]ince I was 19, and now I am 33." (Notes of Test. "N.T." at 17; R.R. at 60a.) In any event, there is no dispute that the Gutierrez family resides in the mobile home at 102 Hidden Valley Drive, which Gutierrez would not have used as her address at the time she obtained the title from Morris.

[4] Gutierrez included only her exhibits in the Reproduced Record.

[5] In relevant part, Section 102 of the Tax Sale Law defines "property" as "real property which shall include a mobile home or house trailer permanently attached to land or connected with water, gas, electricity or sewage facilities, subject to a tax lien or against which a claim is being or has been filed as a lien." 72 P.S. § 5860.102. Pursuant to the Vehicle Code's 2014 provision regarding transfer of ownership of vehicles used for human habitation:

> If a mobile home . . . that has been anchored to the ground to facilitate connections with electricity, water and sewerage, and previously titled in this Commonwealth to a person using the mobile home . . . as a residence in this Commonwealth immediately preceding its sale or transfer, is offered for sale or transfer, the transferor shall obtain a tax status certification from the tax claim bureau of the county in which the mobile home . . . is situated

**(Footnote continued on next page…)**

2

Gutierrez testified that Morris neither told her that she had to pay taxes nor gave her any proof that taxes had been paid. (Notes of Test. "N.T." at 24; R.R. at 67a.) Gutierrez acknowledged that she never asked. (*Id*.) In any event, "[i]nexperienced and unwitting of real estate tax matters concerning mobile homes and possessing only a bare understanding of the English language," Gutierrez did not notify the Tax Assessment Office of the ownership change.[6] (Trial Ct.'s Op. at 2.)

Subsequently, the Tax Claim Bureau initiated proceedings to sell the mobile home for unpaid taxes pursuant to the Tax Sale Law. In July 2018 and September 2018, the Tax Claim Bureau sent written notices to Morris at the 102 Hidden Valley Drive address. (*Id*. at 3.) All written notices were addressed to Morris as that was the only name listed with the Tax Assessment Office. (*Id*.) The

---

> showing the county, municipal and school district real estate taxes due on the mobile home . . ., as shown by the bureau's records as of the date of the certification, including any delinquent taxes turned over to a third party for collection. The tax status certificate shall be provided to the transferee and the department in conjunction with the transfer of the mobile home . . . .

75 Pa.C.S. § 1111.1. The Tax Claim Bureau acknowledged the Vehicle Code's requirement and stated that it issues such certificates. (N.T. at 40; R.R. at 83a.) However, none was issued for the mobile home at issue.

[6] Section 8821(a) of the Consolidated County Assessment Law provided:

> It shall be the duty of the county assessment office to assess all mobile homes and house trailers within the county according to the actual value thereof. *All mobile homes or house trailers which are subject to taxation as real estate as provided in this chapter shall be assessed and taxed in the name of the owner*. The land upon which the mobile home or house trailer is located at the time of assessment shall be assessed separately and shall not include the value of the house trailer or mobile home located thereon.

Act of October 27, 2010, P.L. 895, 53 Pa.C.S. § 8821(a) (emphasis added). (In 2020, Section 8821 was amended by the Act of July 1, 2020, Section 2. However, the amendment did not change the substance of this provision for purposes of the instant opinion.)

3

first notice was returned with a notation that there was "no mail receptacle" at the address. (Ex. G at 1; R.R. at 136a.) The second one was returned with a notation that it was "not deliverable as addressed" and could not be forwarded. (Ex. H at 1; R.R. at 137a.)

Additionally, the two photographs depict that the Tax Claim Bureau physically posted the mobile home with two written notices of claim. (Exs. TC-1 and TC-2; O.R. Ex. Packet.) The July 2017 notice appeared in a prominent location next to a carport attached to the mobile home. (Trial Ct.'s Op. at 3.) The July 2018 notice appeared in an exterior window of the mobile home following the Tax Claim Bureau's one attempt at personal service by knocking on the door in the middle of the day. (*Id*.) Gutierrez acknowledged that she observed the notices posted on her mobile home. (*Id*. at 2.) However, she was unable to read them and did not seek help in translating them. (*Id*.)

In August 2018, the trial court granted the Tax Claim Bureau's global petition seeking an order waiving personal service for the mobile home at issue and almost sixty other properties. (Pet. to Waive Personal Service, Ex. L at 6; R.R. at 146a.) In so doing, the trial court accepted the Tax Claim Bureau's representation that it "exhausted all reasonable methods to effectuate personal service" on the owners of those properties. (Trial Ct.'s Op. at 3-4.)[7] Additionally, the trial court determined that Gutierrez was neither an owner of record nor an apparent owner and, accordingly, did not even warrant personal service. (*Id*. at 7-9.) In September 2018, the Tax Claim Bureau sold the mobile home for $426.69 at an upset sale for unpaid taxes to purchaser Bigger & Better Rental LLC. In June 2019, Gutierrez filed a

---

[7] Contrary to this representation, at oral argument the Bureau's counsel acknowledged that the Bureau routinely applied for global waivers in advance of a tax sale because personal service was often "difficult."

4

petition to set aside the tax sale. Following the trial court's denial of the petition,[8] Gutierrez appealed to this Court.

A presumption of regularity attaches to tax sale cases. However, once exceptions are filed, the burden shifts to the tax claim bureau to show that proper notice was given. *In re Upset Sale Tax Claim Bureau McKean Cnty. on Sept. 10, 2007*, 965 A.2d 1244, 1248 (Pa. Cmwlth. 2009). The Tax Sale Law's notice provisions must be strictly construed and a tax claim bureau's failure to comply with all the notice requirements ordinarily will nullify a tax sale. *Cruder v. Westmoreland Cnty. Tax Claim Bureau*, 861 A.2d 411, 415 (Pa. Cmwlth. 2004).

Section 602 of the Tax Sale Law governs the form and content of notice and requires that a notice of a tax sale include the purpose, time, and place of the sale, as well as the approximate upset price, a description of the property, and the name of the owner. 72 P.S. § 5860.602. Section 602 requires three forms of notice to property owners before upset sales: publication, posting, and mail. Additionally, where owner-occupied property is at issue, Section 601(a)(3) of the Tax Sale Law provides that the notice described in Section 602 must be personally served on an owner-occupant at least ten days prior to the date of the actual sale by the sheriff. 72 P.S. § 5860.601(a)(3). The requirements found in Section 601(a)(3) are cumulative and apply in addition to those found in Section 602. *Appeal of Neff*, 132 A.3d 637, 645 (Pa. Cmwlth. 2016).

Moreover, actual notice does not waive strict compliance with Section 601(a)(3)'s personal service requirement. *Id*. at 646. Consequently, "unless a taxing bureau obtains an order waiving the personal service requirement for good cause

---

[8] The trial court stayed "[a]ll further proceedings, transactions and transfers related to the title of [Gutierrez's] mobile home . . . until further order of court." (Trial Ct.'s July 12, 2019, Order; O.R., Item No. 6.)

5

shown, its failure to comply with [S]ection 601(a)(3) of the [Tax Sale Law] will render a tax sale invalid." *Montgomery Cnty. Tax Claim Bureau v. Queenan*, 108 A.3d 947, 952 (Pa. Cmwlth. 2015). Although the Tax Sale Law does not define "good cause shown," this Court considers whether the trial court abused its discretion in granting a tax claim bureau's waiver petition by considering the facts of the case "in light of the fundamental purposes of the [Tax Sale] Law."[9] *Appeal of Neff*, 132 A.3d at 650.

"The primary purpose of tax sale laws is to ensure 'the collection of taxes, and not to strip away citizens' property rights.'" *Id*. at 650 [quoting *Rice v. Compro Distrib., Inc*., 901 A.2d 570, 575 (Pa. Cmwlth. 2006)]. In other words, the aim of these laws is not to punish taxpayers who did not pay taxes due to mere oversight or error. *Appeal of Neff*. Instead, the purpose is to protect local governments from persistent tax delinquents such that "failed attempts at personal service of notice may be, depending on the specific facts of the case, legally sufficient to obtain a waiver under Section 601(a)(3) of the Law." *Id*. at 651. However, we must be mindful of the legislature's heightened concern for owner-occupants being divested of the very property in which they are living. *Id*. at 646. In other words, someone's home could be at stake. *Id*. at 651.

On appeal, Gutierrez presents the issue of whether the upset tax sale of her mobile home should be set aside because the Tax Claim Bureau did not personally serve her with notice of the sale. In support, she maintains that the trial court erred in determining that she was not an owner entitled to personal service.

---

[9] An abuse of discretion is not merely an error in judgment but an instance where "in reaching a conclusion, [the] law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason." *Appeal of Neff*, 132 A.3d at 653.

Additionally, she contends that the Tax Claim Bureau failed to establish good cause for a waiver of the personal service requirement.

We disagree with the trial court's determination that Gutierrez did not qualify as an owner entitled to personal service under the Tax Sale Law. Two definitions are relevant. Section 102 of the Tax Sale Law defines an "owner-occupant" as "the owner of a property which has improvements constructed thereon and for which the annual tax bill is mailed to an owner residing at the same address as that of the property." 72 P.S. § 5860.102. In pertinent part, Section 102 defines "owner" as follows:

> [T]he person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and *in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property .* . . .

72 P.S. § 5860.102 (emphasis added).

Because the Tax Assessment Office was unaware of the change in ownership, it did not change its tax rolls from Morris to Gutierrez. Consequently, Gutierrez technically does not meet the definition of "owner-occupant." However, the accepted evidence establishes that Gutierrez is an apparent or reputed owner under Section 102's definition of "owner." The parties stipulated that the title issued by the Department described the mobile home that Gutierrez was living in and named her as its owner. (N.T. at 15; R.R. at 58a.) Additionally, there is no dispute that Gutierrez and her family openly reside in the mobile home located at 102 Hidden

7

Valley Drive.[10] Further, the trial court summarized the parties' stipulation that Gutierrez lived at 102 Hidden Valley Drive and possessed a lot lease at a mobile home court.[11] (Trial Ct.'s May 19, 2020, Mem. and Order at 4; R.R. at 222a.)

Moreover, during the relevant time period, Section 8821(b) of the Consolidated County Assessment Law provided:

> All mobile home court operators, which shall mean every person who leases land to two or more persons for the purpose of allowing the lessees to locate on the land a mobile home or house trailer which is subject to real property taxation, shall maintain a record of the leases, which shall be open for inspection at reasonable times by the county assessment office. Each month, the mobile home court operator shall send a record to the county assessment office of the arrivals and departures of mobile homes or house trailers in the court during the prior month, including the make, model, manufacturer, year and serial number of the mobile home or house trailer.

53 Pa.C.S. § 8821(b).[12] In the present case, there is no dispute that Gutierrez entered into a lease with a mobile home court. Accordingly, there can be little dispute that

---

[10] Photographs of the property during the relevant period depict a car in the carport and outdoor chairs. (Exs. TC-1 and TC-2; O.R. Ex. Packet.)

[11] Gutierrez included in the Reproduced Record what purports to be a lot lease for the mobile home at issue between her immediate family and South Court Mobile Estates Inc. (R.R. at 120a-35a.) However, the purported Exhibit E, which the trial court admitted in evidence over the objections of opposing counsel (N.T. at 14; R.R. at 57a), is not in the original record. As the trial court explained: "[A]fter briefly questioning Ms. Gutierrez concerning the lease, [c]ounsel never provided the lease to the Court or Court staff." (Trial Ct.'s May 19, 2020, Mem. and Order at 4; R.R. at 222a.) Given the fact that the trial court admitted the lease into evidence and counsel for Gutierrez questioned her based on that exhibit, (N.T. at 16; R.R. at 59a), we recognize that Gutierrez had a lease and decline to penalize her for the oversight.

[12] As noted in note 6, Section 8821 was amended in 2020. However, the amendment did not change the substance of this requirement for purposes of the instant opinion.

8

Gutierrez qualified as a "person in open, peaceable and notorious possession of the property," and, therefore, was entitled to personal service.

As for "good cause shown" for the waiver of personal service, we note that the trial court retreated from its initial determination and ultimately concluded that the waiver was unwarranted where the Bureau made only one attempt at personal service by knocking on the door of the mobile home during the day when it posted the second notice. (Trial Ct.'s Op. at 6.) We agree with the trial court's subsequent determination. Once the Bureau received as undeliverable the two notices that it sent to prior owner Morris, it should have been on notice of the possibility of a new owner and exercised due diligence in ascertaining his or her identity and in determining whether to seek a waiver of the personal service requirement.

As noted above, there is no dispute that Gutierrez entered into a lease with a mobile home court and that the Tax Claim Bureau made no attempt to contact the operator, who was bound by law to maintain a record of such leases. We do not believe that it would have been unduly burdensome for the Tax Claim Bureau to have contacted the operator. Additionally, it is of no moment that Gutierrez might have had actual notice of the tax sale.[13] As noted, the personal service notice requirement found in Section 601(a)(3) of the Tax Sale Law is cumulative to the notice requirements found in Section 602. *Appeal of Neff*, 132 A.3d at 645. Further, the notice mandated in Section 602 and the personal service mandated in Section 601(a)(3) serve different purposes. Section 602's notice requirements are intended

---

[13] This is not to say that a trial court could never consider an owner's actual notice of an impending tax sale as a factor in determining whether to grant a waiver of the personal service requirement. However, the legislature never intended for actual notice to substitute for personal service.

9

to ensure that a property owner receives actual knowledge that his or her property is about to be sold for tax delinquency and are not an end in themselves. *Donofrio v. Northampton Cnty. Tax Claim Bureau*, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002). In contrast, the legislature in enacting Section 601(a)(3)'s personal service requirement "expressed a desire to provide a qualitatively different type of notice to an owner[-]occupant and afford such owner [with] increased protection by way of additional notice." *McKelvey v. Westmoreland Cnty. Tax Claim Bureau*, 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009). Hence, the legislature's attribution of enhanced importance to personal service requires a tax claim bureau to establish good cause for a waiver of the requirement.

In conclusion, the trial court did not abuse its discretion in determining that the Tax Claim Bureau failed to establish good cause for waiving the personal service requirement after only one mid-day attempt. Nonetheless, the trial court erred as a matter of law in holding that Gutierrez was not an owner entitled to personal service.

Accordingly, we reverse.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maribel Ruiz Gutierrez,        :
           Appellant      :
                              :
           v.             :    No. 430 C.D. 2020
                              :
Washington County Tax Claim Bureau   :
and Bigger and Better Rental, LLC     :

## O R D E R

AND NOW, this 10th day of June, 2021, the order of the Court of Common Pleas of Washington County is hereby REVERSED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita