# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Darlene M. Lay | : | |
| | : | |
| v. | : | |
| | : | |
| County of Erie Tax Claim Bureau | : | |
| | : | |
| v. | : | |
| | : | |
| Daniel Bolla, as Executor of the | : | |
| Estate of Lawrence C. Bolla, | : | No. 652 C.D. 2021 |
| Appellant | : | |
| | : | |
| | : | |
| In Re: | : | |
| | : | |
| Darlene M. Lay | : | |
| | : | |
| v. | : | |
| | : | |
| County of Erie Tax Claim Bureau | : | |
| | : | |
| v. | : | |
| | : | |
| Daniel Bolla, as Executor of the | : | |
| Estate of Lawrence C. Bolla | : | |
| | : | |
| Appeal of: County of Erie Tax | : | No. 653 C.D. 2021 |
| Claim Bureau | : | Submitted: February 7, 2022 |

## AMENDING ORDER

AND NOW, this 2nd day of March, 2022, the tenth sentence of the first full paragraph of the eighth page of the slip memorandum opinion in the above-matter, filed March 2, 2022, is amended to reflect the following correction (deleting

text inadvertently included in a quotation from the trial court's Opinion of the Court filed May 12, 2021):

> This matter hinges, however, on the additional requirement contained in Section 601(a)(3) of the RETSL that the Bureau personally serve an "owner-occupant" of a property subject to an upset sale with notice of that sale. The RETSL defines "owner-occupant" as "the owner of a property which has improvements constructed thereon and for which the annual tax bill is mailed to an owner residing at the same address as that of the property." Section 102 of the RETSL, 72 P.S. § 5860.102. As the trial court observed, the plain text of this definition "contains four necessary elements: (1) an owner-occupant must be an owner of the property; (2) the property must have improvements constructed thereon; (3) the annual tax bill for ~~the~~ that property must be mailed to an owner ~~at the property~~; and (4) such owner referenced in prong three must reside at the property." Trial Court Opinion at 29; *see also Commonwealth v. Giulian*, 141 A.3d 1262, 1267 (Pa. 2016) ("A statute's plain language generally provides the best indication of legislative intent.").

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Darlene M. Lay          :
                               :
            v.                 :
                               :
County of Erie Tax Claim Bureau :
                               :
            v.                 :
                               :
Daniel Bolla, as Executor of the :
Estate of Lawrence C. Bolla,   :    No. 652 C.D. 2021
                  Appellant    :
                               :
                               :
In Re:                         :
                               :
Darlene M. Lay                 :
                               :
            v.                 :
                               :
County of Erie Tax Claim Bureau :
                               :
            v.                 :
                               :
Daniel Bolla, as Executor of the :
Estate of Lawrence C. Bolla    :
                               :
Appeal of: County of Erie Tax  :    No. 653 C.D. 2021
Claim Bureau                   :    Submitted: February 7, 2022


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: March 2, 2022

Daniel Bolla (Bolla), as Executor of the Estate of Lawrence C. Bolla, and the Erie County Tax Claim Bureau (Bureau) (collectively, Appellants) appeal the May 12, 2021 order of the Court of Common Pleas of Erie County (trial court) granting Darlene M. Lay's (Lay) Petition to Set Aside Tax Sale (Petition) for failure of the Bureau to personally serve Lay with notice of the upset sale of her property. Upon review, we affirm.

In February of 1996, Lay and her husband acquired the property situated at 3827 Lake Front Dive, Millcreek Township, Erie County (Property), as a weekend getaway on the shores of Lake Erie. *See* Opinion of the Court dated May 12, 2021 (Trial Court Opinion)[1] at 2. At that time, the Lays lived in their primary home located in Fairview, Pennsylvania. *See id.* Following her husband's death in 2010, as her financial situation worsened and her tax liabilities became delinquencies, Lay began to purposefully defer payment of taxes owed for one to two years, paying only minimum payments necessary to avoid the sale of her properties at tax sales. *See id.* Eventually Lay sold her primary residence and moved to the Property, although she failed to notify the Erie County Tax Assessment Office that she no longer lived at the Fairview address. *See id.*

By the summer of 2019,[2] Lay had failed to pay the taxes owed on the Property for the tax years 2017 and 2018. *See* Trial Court Opinion at 2. As a result,

---

[1] The trial court adopted the Trial Court Opinion as its opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). *See* Trial Court Pa.R.A.P. 1925(a) Opinion dated July 12, 2021.

[2] As the trial court explained, "[e]very year in late September, the [Bureau] sells numerous properties at auction in an effort to recoup delinquent taxes." Trial Court Opinion at 1. The summertime status of a property's tax liabilities/delinquencies carries importance because

the Property became subject to an upset tax sale in September 2019. *See id.* The Bureau claims it made multiple attempts to provide notice of the upcoming sale to Lay by first-class mail, by publication, and by posting at the Property. *See id.* at 3. Although she claims to have not received these notices, Lay presented to the Bureau office on August 29, 2019, at which time she paid $5,000.00 toward the Property's delinquent tax balance.[3] *See id.* This $5,000.00 payment was approximately $260 shy of 25% of the Property's outstanding tax delinquency balance, the payment of a full 25% of which would have triggered a required notification by the Bureau of the possibility of entering into a stay on the Property upset sale. *See* Trial Court Opinion at 3; *see also* Section 603 of the Real Estate Tax Sale Law (RETSL),[4] 72 P.S. §

[t]he [] Bureau must sell a property at an upset sale if, among other things, a tax claim becomes "absolute." [Section 601(a)(1) of the Real Estate Tax Sale Law (RETSL), Act of July 7, 1947, P.L. 1368, *as amended*,] 72 P.S. § 5860.601(a)(1)(i). A tax claim becomes absolute "[o]n the first day of January next following [notice], if the amount of the tax claim referred to in the notice has not been paid, or no exceptions thereto filed." [Section 311 of the RETSL,] 72 P.S. § 5860.311. Such notice must be provided not later than July 31 of the year in which the taxes become due and must state that "on July first of the year in which such notice if given a one (1) year period for discharge of tax claim shall commence or has commenced to run, and that if full payment of taxes is not made during that period as provided by this act, the property shall be advertised for and exposed to sale under this act[.]"

Trial Court Opinion at 2 n.1.

[3] Lay claimed to have presented to the Bureau to pay a portion of the Property's delinquent taxes as a result of either being reminded to do so by a concerned neighbor or, alternatively, after having overheard someone talking about taxes on the phone during an exercise class. *See* Trial Court Opinion at 3.

[4] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101-5860.803.

2

5860.603.[5]  Lay did not return to the Bureau to further pay on the Property's tax delinquency and the Bureau did not offer an installment plan, as Lay had not paid 25% of the outstanding tax balance.  *See* Trial Court Opinion at 3.  As a result, on

---

[5] Section 603 of the RETSL provides:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment.  So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.  But in case of default in such agreement by the owner or lien creditor, the bureau, after written notice of such default given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent. If sufficient payment has been made to discharge all the taxes and claims which would have caused the property to be put up for sale, the property may not be sold.  If sufficient payment has not been received to discharge these taxes and claims, the bureau shall proceed with the sale of such property in the manner herein provided either at the next scheduled upset sale or at a special upset sale, either of which is to be held at least ninety (90) days after such default.  If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default.

72 P.S. § 5860.603.

3

September 30, 2019, the Bureau sold the Property to Lawrence Bolla[6] at the annual upset tax sale. *See id.*

Lay initiated the instant action on October 25, 2019, by filing the Petition in the trial court. After settlement attempts proved unfruitful, the trial court conducted a multi-day hearing in November 2020. *See* Trial Court Opinion at 3. On May 12, 2021, the trial court entered the Trial Court Opinion and an order granting Lay's Petition to Set Aside Tax Sale. *See* Trial Court Opinion; *see also* Order of the [Trial] Court dated May 12, 2021. This appeal followed.[7]

On appeal,[8] both Appellants claim that the trial court erred by determining that, under the RETSL, Lay was entitled to personal service of notice of the tax sale by virtue of being an owner-occupier of the Property or that, alternatively, the trial court could and should have found waiver of the personal service requirement in this matter. *See* Bureau's Br. at 20-25; Bolla's Br. at 26-41. Appellants additionally claim that the trial court further erred by failing to find that Lay's actual notice of the impending tax sale of the Property cured the Bureau's failure to personally serve her. *See* Bureau's Br. at 25-30; Bolla's Br. at 42-43. Appellants further claim that the trial court erred by failing to determine that Lay's

---

[6] Lawrence Bolla passed away in December 2020. *See* Trial Court Opinion at 4 n.3. Daniel Bolla has been substituted as a party in his capacity as the executor of the Estate of Lawrence Bolla. *See id.*

[7] Bolla and the Bureau timely filed separate appeals with this Court, which appeals the Court initially docketed individually at 652 C.D. 2021 and 653 C.D. 2021, respectively, and later consolidated upon joint request of the parties. *See* Commonwealth Court Order dated October 1, 2021.

[8] "Our review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law, or rendered a decision unsupported by the evidence." *In re 1999 Upset Sale of Real Est.*, 811 A.2d 85, 87 n.1 (Pa. Cmwlth. 2002).

4

own intentional conduct caused the Property to be exposed to the upset tax sale and should not be rewarded. *See* Bureau's Br. at 35-37; Bolla's Br. at 43-49.

Initially, we note that "[t]he purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). The property owner notice provisions of Sections 602 and 601(a)(3) of the RETSL are at issue in the instant matter. Regarding Section 602 of the RETSL, this Court has explained:

> In all tax sale cases, the tax claim bureau has the burden of proving compliance with the statutory notice provisions. Section 602 requires three different forms of notice to property owners prior to an upset tax sale: publication, posting, and mail. If any of the three types of notice is defective, the tax sale is void. Notwithstanding our mandate to strictly construe the notice provisions of the law, the notice requirements of Section 602 of the Law are not an end in themselves, but are rather intended to ensure a property owner receives actual notice that his or her property is about to be sold due to a tax delinquency. However, strict compliance with the notice requirements of Section 602 is not required when the Bureau proves that a property owner received actual notice of a pending tax sale.

*In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Props. (Appeal of Neff)*, 132 A.3d 637, 644-45 (Pa. Cmwlth. 2016) (internal citations, footnote, and quotation mark omitted). Accordingly, where property is to be exposed to an upset tax sale, Section 602 of the RETSL requires that the bureau must first provide the property owner notice by publication, mail, and posting. 72 P.S. § 5860.602. "If any method of notice is defective, the tax sale is void." *Krawec v. Carbon Cnty. Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004).

5

Further, "[i]n addition to the notice requirements of Section 602 of the [RETSL], if the property is[] occupied by the owner, Section 601(a)(3) of the [RETSL] requires that each owner-occupant receive additional notice of a tax sale by personal service." *Appeal of Neff*, 132 A.3d at 645. Specifically, Section 601(a)(3) provides:

> No owner-occupied property may be sold unless the bureau has given the owner[-]occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3). This Court has stated unambiguously that "[t]he requirements of Section 601(a)(3) are cumulative and apply in addition to [] tax claim bureaus' obligations to provide notice through publications, posting, and mail." *Appeal of Neff*, 132 A.3d at 645. Therefore, actual notice is not a defense to a lack of personal service under Section 601(a)(3) and does not cure a defect in the

personal service requirement. *See McKelvey v. Westmoreland Cnty. Tax Claim Bureau,* 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009).

Thus, this Court has summarized the tax sale notice requirements as follows:

> In sum, in the absence of actual notice, the [b]ureau must prove strict compliance with the notice requirements of Section 602 of the [RETSL]. Further, and notwithstanding whether a taxpayer received actual notice, the [b]ureau must demonstrate that it personally served notice on any owner-occupant of the [p]roperty subject to the upset tax sale or obtained a waiver of personal service from the trial court.

*Appeal of Neff*, 132 A.3d at 646.

Here, despite her contestations to the contrary (which the trial court did not credit[9]), the trial court expressly found that the Bureau satisfied the Section 602 notice requirements of mailing, publication, and posting. *See* Trial Court Opinion at 8-13. The trial court further found that Lay received actual notice of the sale on multiple occasions, from the posting of the Property, the mailing of the notice to her post office box, and through her interaction with a Bureau tax claim clerk on August 29, 2019. *See id.* at 13-18. The evidence adduced at the hearing supports both of these conclusions. The Notice of Public Sale sent to Lay and her late husband at their address of record (which was then forwarded to Lay's rented post office box) and other addresses related to Lay, together with live testimony regarding those

---

[9] *See* Trial Court Opinion at 13, 14; *see also Laurel Rd. Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018) ("It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. This Court, accordingly, cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court." (internal citations and quotation marks omitted)).

7

mailings, evidenced the Bureau's compliance with the mailing requirements of Section 602. *See id.* at 8-11, 14-16. The field report from the Bureau's appointed posting agent and credible testimony from multiple witnesses evidenced that the Property was posted at 9:35 a.m. on July 26, 2019. *See id.* at 11-14. Additionally, the credible testimony of the Bureau's tax claim account clerk established that the clerk had provided Lay with actual notice of the impending Property upset sale. *See id.* at 16-17. Therefore, the trial court did not err in denying Lay's claim that she did not receive adequate notice of the upset tax sale or by finding that the Bureau satisfied the requirements set forth in Section 602 of the RETSL. *See id.* at 18.

This matter hinges, however, on the additional requirement contained in Section 601(a)(3) of the RETSL that the Bureau personally serve an "owner-occupant" of a property subject to an upset sale with notice of that sale. The RETSL defines "owner-occupant" as "the owner of a property which has improvements constructed thereon and for which the annual tax bill is mailed to an owner residing at the same address as that of the property." Section 102 of the RETSL, 72 P.S. § 5860.102. As the trial court observed,[10] the plain text of this definition "contains four necessary elements: (1) an owner-occupant must be an owner of the property; (2) the property must have improvements constructed thereon; (3) the annual tax bill for that property must be mailed to an owner; and (4) such owner referenced in prong three must reside at the property." Trial Court Opinion at 29; *see also Commonwealth v. Giulian*, 141 A.3d 1262, 1267 (Pa. 2016) ("A statute's plain language generally provides the best indication of legislative intent."). Regarding the interaction between the third and fourth elements, this Court has explained that

---

[10] Prior to this observation, the trial court engaged in a thorough and comprehensive exploration of the definition of "owner-occupant," the details and analysis of which we need not duplicate herein. *See* Trial Court Opinion at 20-29.

8

the focus of this definition must be on the phrase "owner residing at . . . the property" as opposed to the "address . . . of the property" portion of the definition. *See In Re Petition to Set Aside Upset Tax Sale*, 218 A.3d 995, 1000 (Pa. Cmwlth. 2019). Additionally, "the burden is not on the taxpayer to prove that [she] is an owner[-]occupant, but for the [b]ureau to prove that it satisfied the notice requirements under circumstances wherein the General Assembly included heightened protection for the owner[-]occupant." *Id.* at 1001 n.12.

No question exists in this case that Lay was the owner of the Property, that she was mailed an annual tax bill for the Property, or that the Property had improvements constructed thereon. These elements of the definition are not in dispute. Additionally, the trial court found that Lay did, in fact, reside at the Property, based on the testimony of a carpenter who performed work for Lay at the Property, two friends of Lay who often visited her at the Property, and a realtor who testified that Lay had told him she lived at the Property, that the Property seemed lived in and that Lay was busy with chores at the Property and had many possessions therein. *See* Trial Court Opinion at 29-30. As such, the trial court ruled that Lay satisfied all the necessary conditions of the definition of an "owner-occupant" under the RETSL and was therefore an owner-occupant under the RETSL as a matter of law. *See id.* at 30. We find no error in this determination.

The next question is whether the Bureau personally served Lay with notice at least 10 days prior to the date of the actual sale as required by Section 601(a)(3). *See* 72 P.S. § 5860.601(a)(3). The evidence adduced at the hearing of this matter illustrated that the Bureau made only one unsuccessful attempt at personal service on Lay at the Property on July 26, 2019. *See* Trial Court Opinion

9

at 31. Thus, the trial court determined that Lay never received personal service. *See id.* at 32. Again, this was not error.

Where personal service is not or cannot be made on an owner-occupant prior to an upset sale, Section 601(a)(3) does allow the Bureau to receive a waiver of the personal service requirement from a court of common pleas upon request and for good cause shown. *See* 72 P.S. § 5860.601(a)(3). The Bureau did not receive such a waiver for personal service in the instant matter, however. *See* Trial Court Opinion at 32-34, 42. Consistent with the trial court's finding, the evidence establishes that, while the Bureau did submit to the court of common pleas a petition to waive personal service for a number of properties anticipated to be sold at the 2019 Erie County upset tax sale (Waiver Petition), the Property was not identified in the Waiver Petition as a property for which the Bureau requested a waiver.[11] *See id.* at 32-34. Because the Property was not included in the Waiver Petition, the trial court determined that the common pleas order granting the Waiver Petition did not waive the Section 601(a)(3) personal service requirement as to the Property. *See id.* at 34. Because the Property was not properly included in the Waiver Petition, we agree with the trial court that the Bureau never requested a waiver of the personal service requirements relative to the upset sale of the Property, and, therefore, we find no error in the trial court's determination.

---

[11] We acknowledge that the Waiver Petition included two exhibits: Exhibit A, which identified the properties for which the Bureau was seeking a waiver of personal service and which did not include the Property; and Exhibit B, a compact disc which included 5,716 pages containing information on the various properties to be exposed to the 2019 upset tax sale, which notes the Property as one of the properties so exposed, and purportedly documents three attempts at personal service of the Property. *See* Trial Court Opinion at 32-33. In addition to inaccurately stating that three attempts at personal service on Lay occurred at the Property, Exhibit B was simply a companion to Exhibit A, which identified the properties for which the Bureau sought waiver. *See id.* Therefore, as the trial court explained, "[i]n order [for personal service] to be waived, the [P]roperty would have had to be included in Exhibit A[,]" which it was not. *Id.* at 34.

10

To the extent the Bureau argues that the trial court erred by not determining post-sale that good cause existed to waive the personal service requirement, we do not agree. As the trial court correctly noted, the RETSL provides no authority for a court of common pleas to make such a determination where a waiver was never sought in the first place. *See* Trial Court Opinion at 35-36. As such, the trial court had no authority to determine whether good cause for waiver of personal service existed, and the trial court did not err by refusing to make such a determination.

Additionally, the trial court's finding that Lay was a serial and willing tax delinquent does not change the result. Simply put, as the trial court noted, no serial delinquent exception exists in the RETSL. *See* Trial Court Opinion at 55-56. The trial court correctly observed that, "given the unequivocal language of *McKelvey*, if such an exception is to be recognized, the pronouncement must come from the Commonwealth Court sitting *en banc*, our Supreme Court, or better yet, the General Assembly." *Id.* at 56.

Likewise, that Lay had actual notice of the impending Property upset sale does not excuse the Bureau's obligation to personally serve Lay as an owner-occupier with notice of the sale. *See McKelvey*, 983 A.2d at 1274. While actual notice may excuse the notice requirements of Section 602 of the RETSL,[12] the same is not true of the Section 601(a)(3) personal service requirement for owner-occupiers. As this Court has explained:

> The plain language of [S]ection 601(a)(3) unequivocally commands that "no owner occupied property may be sold"

---

[12] *See Appeal of Neff*, 132 A.3d at 645 ("[S]trict compliance with the notice requirements of Section 602 is not required when the Bureau proves that a property owner received actual notice of a pending tax sale.").

unless the owner[-]occupant has received personal service of notice. The provision sets forth only one exception, an order waiving the personal service requirement for good cause shown. The distinction between [S]ection 601, requiring personal service of notice to owner occupiers, and [S]ection 602, requiring notice by certified mail to all property owners, indicates that the legislature recognized a distinction between an owner who stands to lose his property and one who stands to lose his home as well. By enacting [S]ection 601, the legislature expressed a desire to provide a qualitatively different type of notice to an owner[-]occupant and afford such owner increased protection by way of additional notice.

*Id.* at 1274; *see also Montgomery Cnty. Tax Claim Bureau v. Queenan*, 108 A.3d 947, 953 (Pa. Cmwlth. 2015) (citing *McKelvey* in noting that, even where actual notice is established, "the owner-occupied status of [a] property implicates section 601(a)(3) of the [RETSL] and renders actual notice irrelevant."); *Harris v. Cnty. of Lycoming Tax Claim Bureau* (Pa. Cmwlth., No. 1029 C.D. 2019, filed Jan. 7, 2021),[13] slip op. at 14-15. As the trial court correctly noted, *McKelvey* is settled precedent and therefore controls this matter, where the lack of personal service upon Lay is not in dispute. *See* Trial Court Opinion at 49, 54-55. We find no error in the trial court's conclusion that the Bureau's failure to personally serve Lay with notice of the upset sale as an owner-occupant rendered the upset sale invalid. *See id.* at 56.

Ultimately, we find no error in the trial court's determination that the upset sale of the Property was invalid based on the Bureau's failure to personally serve Lay, an owner-occupant of the Property, and that this failure was not cured by either Lay's actual knowledge of the sale or her status as a serial and willing tax

---

[13] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

delinquent. *See* Trial Court Opinion at 56. Accordingly, we affirm the thorough and well-reasoned decision of the trial court granting the Petition.[14]

_____
CHRISTINE FIZZANO CANNON, Judge

Judges Covey and Wallace did not participate in the decision of this case.

---

[14] As a result of our determination herein that the upset sale was invalid as a result of the Bureau's failure to personally serve notice of the tax sale upon Lay as required by Section 601(a)(3) of the RETSL, we need not address any remaining claims raised by Appellants.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Darlene M. Lay   :
         :
    v.      :
         :
County of Erie Tax Claim Bureau :
         :
    v.      :
         :
Daniel Bolla, as Executor of the :
Estate of Lawrence C. Bolla,  :  No. 652 C.D. 2021
     Appellant  :
         :
         :
In Re:        :
         :
Darlene M. Lay     :
         :
    v.      :
         :
County of Erie Tax Claim Bureau :
         :
    v.      :
         :
Daniel Bolla, as Executor of the :
Estate of Lawrence C. Bolla  :
         :
Appeal of: County of Erie Tax  :  No. 653 C.D. 2021
Claim Bureau      :

## O R D E R

   AND NOW, this 2nd day of March, 2022, the May 12, 2021 order of the Court of Common Pleas of Erie County is AFFIRMED.

          _____
          CHRISTINE FIZZANO CANNON, Judge